[No. 25783-5-III.  Division Three.  March 13, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. DENNIS PATRICK
BUCKNELL, *Appellant*.

*Janet G. Gemberling* (of *Gemberling & Dooris, PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Mark E. Lindsey, Deputy,* for respondent.

¶1 STEPHENS, J.[*] — Dennis Patrick Bucknell appeals his conviction for one count of second degree rape. He contends the evidence was insufficient to support the conviction. We reverse and remand for entry of judgment on the lesser charge of third degree rape.

---

[*] Justice Debra L. Stephens was a member of the Court of Appeals at the time oral argument was heard on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

¶2 On February 20, 2005, Officer Nathan Bohanek was dispatched to Sacred Heart Medical Center to investigate a reported incident of rape involving Mr. Bucknell's sister, Michelle Mummert. Ms. Mummert suffered from Lou Gehrig's disease and was unable to move from her chest down.[1] When the officer arrived at the hospital, he spoke with emergency room nurse, Laura Malheim-Barslof. Ms. Mummert had told Ms. Malheim-Barslof that Mr. Bucknell had had vaginal intercourse with her. She also said that Mr. Bucknell had licked her breasts and told her that he would hurt her if she did not have sex with him.

¶3 Later that evening, Officer Bohanek went to Mr. Bucknell's home. Mr. Bucknell told the officer that he had been drinking with Ms. Mummert at her home. He said he rubbed Ms. Mummert's stomach near her waistline and her chest. Mr. Bucknell then told the officer that he might have been drunk and that he probably put his hands down his sister's pants. He said he penetrated Ms. Mummert's vagina with his fingers.

¶4 Mr. Bucknell was charged with one count of second degree rape and one count of first degree incest. The information was later amended to charge Mr. Bucknell with one count of second degree rape, one count of first degree incest, and one count of intimidating a witness. The matter then proceeded to a jury trial.

¶5 At the start of trial, the State showed the jury the taped deposition of Ms. Mummert. Ms. Mummert passed away prior to the start of the trial. In her taped testimony, Ms. Mummert said that on the day her husband was in a burn accident, her cousin, Judy Coulter, and Mr. Bucknell and his daughter came over to her house to take care of her. She said that when Mr. Bucknell's daughter left to go to the store and Ms. Coulter left to go home, she was alone with Mr. Bucknell. Ms. Mummert said that while she was alone with Mr. Bucknell, he put his fist into her vagina. She then

---

[1] Ms. Mummert passed away in March 2005.

said that Mr. Bucknell put his penis inside her body and licked her breasts.

¶6 Ms. Coulter testified next. Ms. Coulter testified that on February 19, 2005, she went to Ms. Mummert's home. While she was there, Mr. Bucknell and his daughter also came to the house. Ms. Coulter said that while Mr. Bucknell and his daughter were at the house, she went home to shower and pack a bag so that she could stay at Ms. Mummert's home for the weekend. When she returned, Ms. Coulter said Mr. Bucknell was at the home alone. The next day, Ms. Coulter said that Ms. Mummert was very upset and extremely agitated. She said that she was afraid and would scream whenever Ms. Coulter left the room. Ms. Coulter said that Ms. Mummert told her that she had been sexually assaulted the day before.

¶7 Emergency room physician Steven M. Uhron, MD, testified that he treated Ms. Mummert. He said that Ms. Mummert was bedridden and could not walk. He said that he was not concerned with her ability to understand or perceive information, and individuals with Lou Gehrig's disease maintain their mental status to the end. He said that he was able to ask Ms. Mummert questions and that she responded appropriately.

¶8 After the State rested, Mr. Bucknell testified. Mr. Bucknell said that he was at Ms. Mummert's home on February 19, 2005 and that he had sex with her. Mr. Bucknell said that he had sex with Ms. Mummert with her "permission." Report of Proceedings (RP) at 101. He said that he untaped her diaper and inserted his fingers into her vagina. He said that Ms. Mummert could barely move her hands. He said that he and Ms. Mummert had been lovers since she was about 23 years old. He said that he "had no problem" with the fact that Ms. Mummert was unable to physically resist him because he had had sex with her in the past. RP at 115-16.

¶9 At the conclusion of the trial, the jury convicted Mr. Bucknell as charged. On appeal, Mr. Bucknell challenges

only the second degree rape conviction, contending the evidence was insufficient to support this conviction.

■ ¶10 In reviewing a sufficiency of the evidence challenge, the test is whether, after viewing the evidence in a light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The elements of a crime may be established by either direct or circumstantial evidence, and one type is no more valuable than the other. *State v. Thompson*, 88 Wn.2d 13, 16, 558 P.2d 202, *appeal dismissed*, 434 U.S. 898 (1977). "Credibility determinations are within the sole province of the jury and are not subject to review." *State v. Myers*, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997). Assessing discrepancies in trial testimony and the weighing of evidence are also within the sole province of the fact finder. *State v. Longuskie*, 59 Wn. App. 838, 844, 801 P.2d 1004 (1990).

■ ¶11 To convict Mr. Bucknell of second degree rape, the State had to prove that, under circumstances not constituting rape in the first degree, Mr. Bucknell engaged in sexual intercourse with Ms. Mummert when she was incapable of consent by reason of being physically helpless or mentally incapacitated. RCW 9A.44.050(1)(b). The State alleged at trial that Ms. Mummert was physically helpless because she was suffering from Lou Gehrig's disease. " 'Physically helpless' means a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act." RCW 9A.44.010(5).

■ ¶12 Mr. Bucknell now argues that the State failed to prove that Ms. Mummert was physically incapable of consent. He argues that despite Ms. Mummert's illness and physical limitations, she was able to speak and make decisions, and was in "full possession of her mental faculties." Br. of Appellant at 6. Washington courts have not yet

directly addressed whether a victim of a debilitating disease is "physically helpless" for purposes of establishing the crime of second degree rape when the victim is able to speak or verbally communicate in some way. Authorities from other jurisdictions, however, support the conclusion that a victim with physical limitations but capable of communicating unwillingness is not deemed physically helpless under the Washington statute.

¶13 The New York and Florida criminal statutes defining "rape" are identical to the Washington statute in their definition of "physically helpless." Each of these states define the term as follows: " 'Physically helpless' means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." N.Y. Penal Law § 130.00(7); *see also* Fla. Stat. § 794.011(1)(e). These states have also held that a rape victim is not "physically helpless" when she can communicate orally, even if unable to express an objection by any other means. *People v. Morales*, 139 Misc. 2d 200, 528 N.Y.S.2d 286, 287 (Sup. Ct. 1988) (stating that a woman unable to move her arms or legs due to muscular dystrophy was not "physically helpless" because she could speak); *People v. Huurre*, 193 A.D.2d 305, 603 N.Y.S.2d 179, 182 (1993) (stating that a profoundly mentally retarded woman who could grunt and mumble was not "physically helpless"), *aff'd*, 84 N.Y.2d 930, 645 N.E.2d 1210, 621 N.Y.S.2d 511 (1994); *Bullington v. State*, 616 So. 2d 1036, 1038 (Fla. Dist. Ct. App. 1993) (stating that a victim who was tied with restraints was not "physically helpless" because she was able to communicate orally); *State v. Sedia*, 614 So. 2d 533, 534 (Fla. Dist. Ct. App. 1993) (stating that victims are not considered "physically helpless to resist" when they are able to communicate their unwillingness to participate in sexual intercourse even if otherwise helpless); *People v. Clyburn*, 212 A.D.2d 1030, 623 N.Y.S.2d 448, 449 (1995) (victim afflicted with Huntington's Chorea, but able to speak, was not "physically helpless").

¶14 Here, Ms. Mummert was bedridden and unable to move from her chest down. However, she was able to talk,

answer questions, and understand and perceive information. Based on these facts and case law from other jurisdictions involving analogous rape laws, Ms. Mummert's ability to communicate orally, despite her physical limitations, likely did not render her "physically helpless" as contemplated in RCW 9A.44.050(1)(b). Given this statutory requirement, the evidence was insufficient to convict Mr. Bucknell of second degree rape.

¶15 The State contends that the evidence was nonetheless sufficient to support a conviction on the lesser charge of third degree rape.

¶16 When the evidence is sufficient to support conviction of a lesser crime, this court may remand the case for entry of judgment and sentence on the lesser crime. *State v. Atterton*, 81 Wn. App. 470, 473, 915 P.2d 535 (1996). A person is guilty of third degree rape when, under circumstances not amounting to first or second degree rape, such person engages in sexual intercourse with another person, not married to the perpetrator, where the victim did not consent as defined in RCW 9A.44.010(7) and such lack of consent was clearly expressed by the victim's words or conduct. RCW 9A.44.060(1)(a). " 'Consent' means that at the time of the act or sexual intercourse there are actual words or conduct indicating freely given agreement to have sexual intercourse." RCW 9A.44.010(7). Third degree rape is a lesser offense to the charged crime of second degree rape. RCW 10.61.003, .010.

¶17 Here, Ms. Mummert and Mr. Bucknell were not (and could not be) married. Mr. Bucknell testified at trial that he and Ms. Mummert had sexual intercourse on February 19, 2005. Although he also testified at trial that the sexual intercourse was consensual, the jury's verdict shows it rejected this claim. Moreover, there was no evidence that Ms. Mummert, through actual words or conduct, freely agreed to have sexual intercourse with Mr. Bucknell. Ms. Mummert testified that she did not want Mr. Bucknell to touch her and she said he felt like he did something that he should not have done. She also told the emergency room

nurse that Mr. Bucknell said he would hurt her if she did not have sexual intercourse with him. This evidence and the reasonable inferences therefrom are sufficient to support a conviction of Mr. Bucknell on the lesser charge of third degree rape.

¶18 Accordingly, we reverse and remand for entry of judgment on the lesser charge of third degree rape.

SWEENEY, C.J., and KULIK, J., concur.