FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 MAY 28 AM 8: 38



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68061-7-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| MOHAMAUD SULDAN MOHAMED, | ) | PUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: May 28, 2013 |
|  | ) |  |

Cox, J. — Under RCW 9A.44.100(1)(b), a person is guilty of indecent liberties if he or she "knowingly causes another person who is not his or her spouse to have sexual contact with him or her or another . . . [w]hen the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless." A person's knowledge that the victim is "incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless" is not an essential element of this crime. Thus, here, where Mohamaud Mohamed was charged with the crime of indecent liberties, such knowledge need not have been included in the information. And there was sufficient evidence to convict Mohamed of indecent liberties. We affirm.

Mohamed, M.M., and M.M.'s boyfriend, Nolan Milgate, attended a party in Seattle in 2011. Mohamed met M.M and Milgate for the first time at this party.

During the party, Mohamed and M.M. consumed alcohol. Mohamed also consumed marijuana. Mohamed and M.M. conversed during the party.

At the end of the party, Mohamed missed his ride home. The hostess told Mohamed that he could sleep on a couch on the first floor. M.M. and Milgate also spent the night at the house in an upstairs bedroom.

M.M. testified at trial that she was sleeping in bed with Milgate when she was awakened by someone touching her vagina. At first she thought it was Milgate. But then she felt fingers in her mouth and a penis penetrating her vagina. M.M. further testified that she realized that Mohamed was in the bed with her. M.M. moved away from Mohamed and woke up Milgate. She told Milgate that she had been raped.

Milgate grabbed Mohamed, and they started fighting. A neighbor saw the fighting through a window and called 911. Milgate also called for help. The police arrived, interviewed witnesses, and arrested Mohamed.

The State initially charged Mohamed with third degree rape, but it later amended the charge to indecent liberties.

Mohamed testified at trial that he and M.M. "made out" on the first floor of the house before they went to sleep that night. He testified that he fell asleep on the couch downstairs, and M.M. went upstairs. Later, he went upstairs to find a bathroom. While he was looking for a bathroom, he opened the door to the

bedroom where M.M. and Milgate were sleeping, and Milgate hit him. Mohamed testified that he never got into bed with M.M. and Milgate.

The jury convicted Mohamed as charged.

Mohamed appeals.

## ADEQUACY OF INFORMATION

Mohamed argues that his conviction must be reversed because the State failed to allege in the amended information all of the essential elements of indecent liberties. Specifically, he claims that an essential element of this crime is "knowledge that the person was incapable of consent by reason of being physically helpless."[1] We hold that such knowledge is not an essential element of this crime and need not be included in an information.

Constitutional law and CrR 2.1(b) require that "[a]ll essential elements of a crime, statutory or otherwise, . . . be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him."[2] "An 'essential element is one whose specification is necessary to establish the very illegality of the behavior.'"[3]

To determine the elements of a crime, a court looks at the language of the statute.[4] If the plain language of a statute is unambiguous, the court need not

---

[1] Appellant's Opening Brief at 6-10.

[2] State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991) (citing U.S. CONST. amend. 6; CONST. art. 1, § 22 (amend. 10); CrR 2.1(b)).

[3] State v. Tinker, 155 Wn.2d 219, 221, 118 P.3d 885 (2005) (quoting State v. Johnson, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992)).

[4] Kjorsvik, 117 Wn.2d at 101.

construe the statute.[5] "But if the language may be reasonably interpreted in more than one way, it is ambiguous . . . ."[6] The court may rely on standard aids to statutory construction to determine the legislative intent.[7] This court reviews de novo statutory construction issues[8] and challenges to the sufficiency of a charging document.[9]

Here, Mohamed argues that the information failed to allege a statutory element of indecent liberties. RCW 9A.44.100(1), which defines that crime, states in full:

> (1) A person is guilty of indecent liberties when he or she knowingly causes another person who is not his or her spouse to have sexual contact with him or her or another:
>
> (a) By forcible compulsion;
>
> (b) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless;
>
> (c) When the victim is a person with a development disability and the perpetrator is a person who is not married to the victim and who:
>
> (i) Has supervisory authority over the victim; or
>
> (ii) Was providing transportation, within the course of his or her employment, to the victim at the time of the offense;

---

[5] State v. Cooper, 176 Wn.2d 678, 683, 294 P.3d 704, 706 (2013).

[6] Id.

[7] Id.

[8] State v. Bradshaw, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004).

[9] State v. Williams, 162 Wn.2d 177, 182, 170 P.3d 30 (2007).

(d) When the perpetrator is a health care provider, the victim is a client or patient, and the sexual contact occurs during a treatment session, consultation, interview, or examination. It is an affirmative defense that the defendant must prove by a preponderance of the evidence that the client or patient consented to the sexual contact with the knowledge that the sexual contact was not for the purpose of treatment;

(e) When the victim is a resident of a facility for persons with a mental disorder or chemical dependency and the perpetrator is a person who is not married to the victim and has supervisory authority over the victim; or

(f) When the victim is a frail elder or vulnerable adult and the perpetrator is a person who is not married to the victim and who:

(i) Has a significant relationship with the victim; or

(ii) Was providing transportation, within the course of his or her employment, to the victim at the time of the offense.

The State charged Mohamed under RCW 9A.44.100(1)(b). The amended information stated:

> I, Daniel T. Satterberg, Prosecuting Attorney for King County in the name and by the authority of the State of Washington, do accuse MOHAMAUD SULDAN MOHAMED of the crime of **Indecent Liberties**, committed as follows:
>
> That the defendant MOHAMAUD SULDAN MOHAMED in King County, Washington, on or about April 16, 2011, did **knowingly cause M.M.** (DOB 12/2/90), who was not the spouse of the Defendant and **who was incapable of consent by reason of being** (a) mentally defective, (b) mentally incapacitated, [or] (c) **physically helpless, to have sexual contact with the Defendant.**
>
> Contrary to RCW 9A.44.100(1)(b), and against the peace and dignity of the State of Washington.[10]

---

[10] Clerk's Papers at 7 (emphasis added).

5

*Elements of Indecent Liberties*

For the first time on appeal, Mohamed argues that the amended information is defective because it failed to allege an element of indecent liberties. He specifically argues that the word "knowingly" applies to subsection (b) of the above statute. Thus, he contends that the statute required the State to prove that Mohamed had knowledge that M.M. was "incapable of consent by reason of being . . . physically helpless." We reject this argument because it is based on a misreading of the statute.

The sentence structure of RCW 9A.44.100(1) places the adverb, "knowingly," immediately before the verb, "causes." Generally, an adverb modifies the word to which it is placed closest.[11] This sentence structure makes clear that one must "knowingly cause[] another person who is not his or her spouse to have sexual contact with him or her or another" to be guilty of indecent liberties.

Mohamed does not dispute this reading of the statute. Rather, he makes a different argument. He claims that "knowingly" also modifies the language of subsection (b): "When the other person is incapable of consent by reason of being . . . physically helpless." He is mistaken.

---

[11] *See, e.g.*, THE CHICAGO MANUAL OF STYLE ¶ 5.165 (16th ed. 2010) ("The adverb should generally be placed as near as possible to the word it is intended to modify. . . . Placing the adverb with the word it modifies makes the meaning clear . . . .").

6

When interpreting statutes, statutory provisions must be read in their entirety and within the context of the statutory scheme as a whole.[12] "Statutes should not be construed so as to render any portion meaningless or superfluous."[13] "[T]he rule of statutory construction that trumps every other rule" is that "'the court should not construe statutory language so as to result in absurd or strained consequences.'"[14]

We conclude that "knowingly" does not apply to subsection (b) of the indecent liberties statute for two reasons.

First, the colon that appears at the end of the lead passage of RCW 9A.44.100(1) identifies that what follows are the alternative means of committing the crime. Thus, if "knowingly" applied to subsection (b), it follows that it must also apply to the other subsections, stating other alternative means. But applying "knowingly" to the other subsections of this statute leads to absurd or unlikely results.

For example, applying "knowingly" to subsections (d) and (e) makes no sense. Subsection (d) provides that a person is guilty of indecent liberties "[w]hen the perpetrator is a health care provider, the victim is a client or patient, and the sexual contact occurs during a treatment session, consultation, interview,

---

[12] ITT Rayonier, Inc. v. Dalman, 122 Wn.2d 801, 807, 863 P.2d 64 (1993).

[13] Stone v. Chelan County Sheriff's Dep't, 110 Wn.2d 806, 810, 756 P.2d 736 (1988).

[14] Davis v. State ex rel. Dep't of Licensing, 137 Wn.2d 957, 971, 977 P.2d 554 (1999) (quoting In re Custody of Smith, 137 Wn.2d 1, 8, 969 P.2d 21 (1998)).

or examination."[15] Subsection (e) provides that a person is guilty of this crime "[w]hen the victim is a resident of a facility for persons with a mental disorder or chemical dependency . . . and has supervisory authority over the victim."[16] These subsections require the State to prove a defendant's status in relation to the victim. It does not make sense that the State would have to prove that the defendant knew of his or her own status with respect to the victim.

Since applying such knowledge to these other subsections does not make sense, it follows that "knowingly" does not apply to subsection (b) of the statute.

Second, applying "knowingly" to subsection (b) shifts the burden of proof in ways inconsistent with relevant statutes. RCW 9A.44.030 sets out the defenses to the prosecution of sex offenses under the chapter. It provides the following relevant affirmative defense for an accused:

> (1) In any prosecution under this chapter in which lack of consent is based solely upon the victim's mental incapacity or upon the victim's being physically helpless, *it is a defense which the defendant must prove by a preponderance of the evidence* that at the time of the offense the defendant reasonably believed that *the victim was not* mentally incapacitated and/or *physically helpless.*[17]

According to this provision, the *defendant* has the burden of proving by a preponderance of the evidence this reasonable belief defense. But if "knowingly" applied to subsection (b) of RCW 9A.44.100(1), the *State* would have the burden

---

[15] RCW 9A.44.100(1)(d).

[16] RCW 9A.44.100(1)(e).

[17] RCW 9A.44.030(1) (emphasis added).

of proving beyond a reasonable doubt the required knowledge.[18] Specifically, the State would have to prove that the defendant knew the victim was "incapable of consent by reason of being . . . physically helpless."[19] Mohamed offers no persuasive explanation why his reading of the statute is correct, in view of RCW 9A.44.030.

As the State correctly argues, if "knowingly" applies to subsection (b) of RCW 9A.44.100(1), the statutory defense of RCW 9A.44.030 would be superfluous. It is unlikely that the legislature intended this result.

Mohamed principally relies on a footnote in this court's decision in State v. Lough[20] to support his argument that "knowingly" applies to subsection (b) of the indecent liberties statute. We disagree with the statement in the footnote of that case to the extent that it states that "knowingly" applies to this subsection of the statute.

That case was an appeal of convictions of indecent liberties and other felonies.[21] Lynn Lough's primary contention on appeal was that the trial court abused its discretion by admitting testimony of women who were allegedly

---

[18] See, e.g., 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 49.02 (3d ed. 2011).

[19] RCW 9A.44.100(1).

[20] 70 Wn. App. 302, 853 P.2d 920 (1993).

[21] Id. at 306.

drugged and raped by Lough as evidence of a common scheme or plan to drug and rape women.[22]

This court outlined the analysis for determining whether evidence of other crimes may be admitted under ER 404(b).[23] One of the steps in that analysis is to determine whether "the evidence is relevant and of consequence to the outcome" of the case.[24] In discussing this part of the analysis, the court stated that the crime of indecent liberties required a showing that "a defendant must knowingly cause 'sexual contact' *and* he must 'knowingly' cause such contact with a person who is 'physically helpless.'"[25] In support of this reading, this court stated in a footnote:

> That "knowingly" modifies both "causes another person . . . to have sexual contact" and "when the other person is . . . physically helpless" is apparent from the sentence structure and punctuation of the statute. It is also apparent from RCW 9A.44.030(1) which allows a defendant to negate culpability by interposing the affirmative defense that he reasonably believed the victim was not physically helpless.[26]

---

[22] Id. at 312-24.

[23] Id. at 313.

[24] Id.

[25] Id. at 325 (quoting RCW 9A.44.030(1)).

[26] Id. at 325 n.14.

We disagree with this reading of the indecent liberties statute. We do so because, in our view, the statement is legally incorrect dicta that we decline to follow.[27]

These statements in Lough are dicta because they were not necessary to the holding that the evidence was admissible under ER 404(b) as a common scheme or plan. On review of the Lough decision, the supreme court did not adopt these statements in concluding that the challenged evidence was admissible.[28] Rather, the supreme court decided the "evidence was relevant to a material assertion of [Lough] that the victim had consented to sexual intercourse and to the question whether he rendered her so helpless that she was unable to refuse."[29]

Moreover, as we already explained in this opinion, the Lough court's reading of the sentence structure of RCW 9A.44.100(1) is legally incorrect. "Knowingly" modifies "causes." It does not modify subsection (b), a more remote provision of the indecent liberties statute.

For the reasons we already explained in this opinion, we disagree with the Lough court's conclusion regarding the affirmative defense statute. Mohamed's argument necessarily requires a shifting of the burden of proof to the State to

---

[27] Ass'n of Wash. Bus. v. Dep't of Revenue, 155 Wn.2d 430, 442 n.11, 120 P.3d 46 (2005) (explaining that language in an opinion is dicta if it is "made in passing and not directly related to the holdings").

[28] State v. Lough, 125 Wn.2d 847, 889 P.2d 487 (1995).

[29] Id. at 862.

prove the accused's knowledge that a victim is physically helpless, making RCW 9A.44.030 superfluous. The legislature is unlikely to have intended this result.

Mohamed also contends that State v. Shipp[30] supports his interpretation of RCW 9A.44.100(1). He argues that Shipp expressed a "rule" of statutory construction that "the word 'knowingly,' followed by a colon, modifies 'everything which follows the colon.'" We are not persuaded that Shipp supports his argument.

In Shipp, Atis Krumins was convicted of promoting prostitution in the first and second degree.[31] The former promoting prostitution statute provided:

> (1) A person is guilty of promoting prostitution in the first degree if he **knowingly:**
>
> (b) Advances or profits from prostitution of a person less than eighteen years old.[32]

Krumins argued that the State had to prove that he had knowledge that the prostitute was under 18.[33] The supreme court agreed.[34] It explained that "the legislature has specifically included the requirement of knowledge."[35] For the

---

[30] 93 Wn.2d 510, 610 P.2d 1322 (1980).

[31] Id. at 512.

[32] Id. at 518 (emphasis added) (citing former RCW 9A.88.070(1) (1975)).

[33] Id. at 519.

[34] Id.

[35] Id.

12

promoting prostitution statute, "[t]he word 'knowingly' precedes a colon and modifies everything which follows the colon."[36]

This statement, in the context of the promoting prostitution statute's structure, makes sense. But it makes no sense in the context of the statute at issue here, where the sentence structure is different.

Mohamed argues that "[t]here is nothing different between the language of the former promoting prostitution statute at issue in Shipp, and the language of the statute at issue in the present case, which compels a different statutory construction result here." But the placement of the word "knowingly" in the indecent liberties statute is different from that in the promoting prostitution statute.[37] In any event, as our analysis in this opinion already explains, sentence structure alone is not the sole basis of why we conclude that "knowingly" does not apply to subsection (b) of the indecent liberties statute.

In sum, a defendant's knowledge that a person is incapable of consent by reason of being physically helpless is not an essential element of indecent liberties. The amended information in this case adequately stated the crime of indecent liberties.

## SUFFICIENCY OF THE EVIDENCE

Mohamed next argues that his conviction must be reversed with prejudice because the evidence was insufficient to prove that he had sexual contact with M.M. while she was incapable of consent. We disagree.

---

[36] Id.

[37] Compare former RCW 9A.88.070(1) (1975) with RCW 9A.44.100(1).

13

The State must prove each essential element of the crime beyond a reasonable doubt.[38] In deciding whether sufficient evidence supports the conviction, the court views the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[39]

A challenge to the sufficiency of the evidence admits the truth of the State's evidence.[40] "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[41] This court defers to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."[42]

Here, the State was required to prove that Mohamed "knowingly cause[d] another person who is not his or her spouse to have sexual contact with him or her or another . . . [w]hen the other person is incapable of consent by reason of being . . . physically helpless."[43] RCW 9A.44.010(2) defines "sexual contact" as

---

[38] In re Winship, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

[39] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[40] Id.

[41] Id.

[42] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[43] RCW 9A.44.100(1).

"any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."

RCW 9A.44.010(5) states, "'physically helpless' means a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act." This court has explained that "[t]he state of sleep appears to be universally understood as unconsciousness or physical inability to communicate unwillingness."[44]

At trial, M.M. testified during redirect examination as follows:

Q. Can you go through the sequence of events of you waking up, and explain to us what your state of consciousness was—

A. Yes.

Q. —at the time?

A. Yes. I was in bed, and **somebody was touching my vagina.** I thought it was [Milgate]. That's when I started waking up. And then the fingers and the penetration kind of happened at the same time. It was enough to like really wake me up, and I woke up and actually opened my eyes and saw [Milgate] sleeping in front of me.

Q. At what point did you feel awake and alert?

A. The penetration—well, the fingers probably, but they happened like simultaneously. They happened at like the same time.[45]

According to other parts of M.M.'s testimony, she first felt the person who turned out to be Mohamed touching her vagina with his hand.[46]

---

[44] State v. Puapuaga, 54 Wn. App. 857, 861, 776 P.2d 170 (1989).

[45] Report of Proceedings (Sept. 22, 2011) at 105 (emphasis added).

[46] Id. at 82.

During cross-examination, M.M. provided similar testimony:

Q.    All right. And, once again, you were—you were woken by the finger in your mouth, not the penetration.

A.    Yes.

Q.    And how much time elapsed between the two?

A.    Well, so there was a confusion earlier. He was touching me, and I was half awake, and I thought it was [Milgate], and then the fingers were in my mouth, and then the penetration.

Q.    Okay. So when the fingers went into your mouth and you weren't asleep, you were half awake, right?

A.    Yes.

Q.    So, during this episode, you were not asleep.

A.    I was half asleep.

Q.    Okay. Well, I'm asking, let's assume that half asleep does not equal being asleep.

A.    Okay, then yes, I was awake.

Q.    Okay, so during this entire episode, you were awake.

A.    Yes.[47]

This evidence shows that M.M. was sleeping until Mohamed began to wake her up by touching her vagina with his hand.[48] The jury was entitled to believe this testimony, which is sufficient to establish the required sexual contact.

---

[47] Id. at 103.

[48] Id. at 82, 103, 105.

16

Further, M.M. testified that she became more conscious when he put his fingers in her mouth and penetrated her vagina with his penis.[49] This evidence demonstrates that a rational trier of fact could have found that Mohamed knowingly caused M.M. to have sexual contact with him when M.M. was sleeping. Her state of sleeping rendered her "physically helpless" for the purpose of the indecent liberties statute.[50] There was substantial evidence to prove that M.M. was incapable of consenting to the sexual contact.

Mohamed argues that "the grogginess of a recent, but past state of sleep does not establish lack of capacity to communicate non-consent." He cites State v. Bucknell[51] and a New York case[52] to support this assertion. We are not persuaded by this argument for two reasons.

First, those cases did not involve a victim who was sleeping. Rather, they addressed one victim who had physical limitations but was able to communicate[53] and another victim who was "profoundly mentally retarded."[54]

Second, M.M.'s testimony shows that she was sleeping until Mohamed began to wake her up by touching her vagina. Thus, her testimony shows that she was unconscious and unable to consent when he began the sexual contact.

---

[49] Id. at 103.

[50] See Puapuaga, 54 Wn. App. at 861.

[51] 144 Wn. App. 524, 183 P.3d 1078 (2008).

[52] People v. Huurre, 193 A.D.2d 305 (N.Y. App. Div. 1993).

[53] Bucknell, 144 Wn. App. at 530.

[54] Huurre, 193 A.D.2d at 306.

17

Mohamed also argues that M.M.'s testimony was inconsistent. He contends that she effectively retracted her testimony that she was unconscious when Mohamed first started touching her vagina. But Mohamed mischaracterizes M.M.'s testimony. M.M. consistently testified that she was sleeping and first started waking up when Mohamed touched her vagina. In any event, the jury was entitled to resolve inconsistencies, if any.

Mohamed claims that "M.M. stated that the vaginal activity only lasted for a few seconds, indicating she was aware of when it began." He essentially argues that M.M. was not "physically helpless" because she was aware of the entire sexual contact. But the testimony he cites to support this argument was regarding the penetration, which was *after* Mohamed touched M.M.'s vagina and put his fingers in her mouth according to M.M.'s testimony. M.M. may have been conscious at the point of penetration, but she was unconscious when Mohamed initially touched her vagina. Thus, this argument is not persuasive.

We affirm the judgment and sentence.

_____Cox, J._____

WE CONCUR:

_____          _____Becker, J._____

18