# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON<br><br>                    Respondent,<br><br>            v.<br><br>ADAN MORALES,<br><br>                    Appellant. | No. 79893-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Morales challenges his conviction for second degree rape. He contends that he was entitled to have the jury instructed on the inferior degree offense of third degree rape, and the trial court erred in declining to give such an instruction. We affirm.

## FACTS

On May 20, 2016, D.P. attended a memorial service for the father of her longtime friend Minnie. Also attending the service was Minnie's friend Meredy Tennison, who brought her fiancé, Adan Morales. After Tennison introduced Morales to D.P., Morales stared at D.P. with a "blank dark stare" throughout the entire service, making D.P. uncomfortable.

After the service, many of the participants went to the home of Minnie and her husband Tony. Minnie invited D.P. to stay the night. Because Minnie and Tony's children were spending the night with relatives, D.P. was given their son's

room to sleep in. Tennison and Morales were to sleep in the children's playroom down the hall.

At the house, D.P. had several drinks and became intoxicated. Eventually, D.P. decided to go to sleep in the bedroom. She testified that she did not change out of the jeans she was wearing because she "passed out."

D.P. woke up sometime in the night and felt someone next to her. D.P. turned over, saw that it was Minnie, and went back to sleep.

Later that night, D.P. again woke up and realized that Morales was on top of her. Her jeans were pushed down to her knees and Morales had his penis inside her vagina. Once D.P. realized what was happening, she tried to push or kick Morales off, but her jeans prevented her from kicking her legs. The next thing D.P. remembered was that Minnie ran into the room, screamed "get off of her" and "jumped on" Morales. Morales said, "[J]ust give me one more second" and "don't blame her. It's not her fault."

Minnie testified that she went to sleep with D.P. in her son's room because her own bedroom was too loud with the sounds of people talking outside the window. She woke up during the night and realized Morales was grabbing her bottom. Believing Morales was confused about where he was, Minnie said "Adan, that's not Meredy. It's Minnie." She got up and went outside to smoke a cigarette. When she left, D.P. was still asleep.

Morales followed Minnie outside. He apologized and Minnie told him it was okay and gave him a hug from the side. When she turned to look at Morales, he had his penis exposed. Minnie immediately put out her cigarette and went into the house. She went into her own bedroom and told Tony what happened. Minnie then immediately went back to her son's bedroom to check on D.P. She opened the door and saw Morales on top of D.P. and "[t]hey were having sex." Minnie could not see D.P.'s face. Minnie shouted Morales's name, then went down the hall and woke up Tennison.

Minnie testified that D.P. was "crying and apologizing" and "very sad." Tony described D.P. as "hysterical." D.P. took a shower and then asked Minnie to call her mother. Minnie told D.P.'s mother that Morales said, "Don't blame her. It's my fault." (Italics omitted.) D.P.'s mother instructed Minnie to call the police. Police arrived and D.P. broke down sobbing several times while talking to them. When D.P.'s mother arrived at Minnie's house, D.P. was still "upset" and "falling apart."

The State charged Morales with second degree rape pursuant to RCW 9A.44.050(1)(b), alleging that D.P. was incapable of consent by being physically helpless or mentally incapacitated.

Morales testified that he accidentally grabbed Minnie's behind, believing she was Tennison. He stated that he and Minnie went outside and Minnie began behaving flirtatiously, sitting on his lap and pressing up against him. Morales testified that he exposed his penis to Minnie and asked "if she wanted some of me" but that Minnie got up and left, saying "it was nasty." According to Morales, he finished smoking a cigarette and went back inside, where he bumped into D.P.

3

coming out of the bathroom. Morales testified that D.P. grabbed ahold of him to steady herself, then tried to kiss him. Morales asked D.P., "Do you want to play?" and D.P. said yes. The two ended up in the bedroom, where D.P. performed oral sex on Morales. Morales stated he offered to perform oral sex on D.P. but D.P. said, "[N]o, let's just fuck" and "grabbed on to my member and got it in." According to Morales, the two had intercourse for about two minutes before Minnie walked in.

At the conclusion of the trial, Morales requested that the jury be instructed on the inferior degree offense of third degree rape. The court concluded there was no factual basis for the instruction, stating "there is a binary choice in front of the jury, either there was consent or there was physical helplessness." The court declined to give the instruction.

A jury found Morales guilty of second degree rape. Morales appeals.

DISCUSSION

Morales's sole claim on appeal is that the trial court erred in failing to instruct the jury on the inferior degree offense of third degree rape.[1] We disagree. Because there was no evidence that affirmatively established the elements of third degree rape, Morales was not entitled to the instruction.

---

[1] Morales also filed a pro se statement of additional grounds for review, contending that the State and the court refused to allow him to "tell my side of the story." Although not entirely clear, Morales appears to be challenging the denial of the inferior degree offense instruction. As this is the same argument raised by appellate counsel, we do not separately address Morales's statement of additional grounds.

A person is guilty of second degree rape, as charged here, when "the victim is incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b). A person is "physically helpless" when a person is "unconscious or for any other reason is physically unable to communicate unwillingness to an act." RCW 9A.44.010(5). When a person is asleep, they are "physically helpless" within the meaning of RCW 9A.44.010(5). State v. Mohamed, 175 Wn. App. 45, 60, 301 P.3d 504 (2013).

Third degree rape, on the other hand, contemplates a lack of consent by a person who is capable of consent. Compare RCW 9A.44.060, with RCW 9A.44.050(b). For acts committed before July 28, 2019, a person is guilty of rape in the third degree "when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person . . . [w]here the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct."[2] Former RCW 9A.44.060 (2013).

RCW 10.61.003 permits, "[u]pon an indictment or information for an offense consisting of different degrees, the jury [to] find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto." A defendant is entitled to an instruction on an inferior degree offense if

---

[2] RCW 9A.44.060 was amended in 2019 to eliminate the requirement that the victim clearly express a lack of consent by words or conduct. LAWS OF 2019, ch. 87, § 3. It now provides that the crime is committed if the victim "did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator." RCW 9A.44.060(1)(a).

(1) the statutes for both the charged offense and the proposed inferior degree offense "'proscribe but one offense,'" (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense, and (3) there is evidence that the defendant committed only the inferior offense to the exclusion of the greater offense. State v. Fernandez-Medina, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000), (quoting State v. Peterson, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)). The first two factors are the legal components of the test, while the third factor entails a factual inquiry. See id. at 454–55.

It is undisputed that the legal prong is met. Third degree rape is an inferior degree offense of second degree rape. State v. Ieremia, 78 Wn. App. 746, 753, 899 P.2d 16 (1995). Thus, the only question is whether the trial court erred in concluding there was no evidence Morales committed only the inferior degree offense to the exclusion of the greater offense.

When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court must view the supporting evidence in the light most favorable to the party that requested the instruction. Fernandez-Medina, 141 Wn.2d at 455–56. A defendant is entitled to the instruction only "if the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater." State v. Warden, 133 Wn.2d 559, 563, 947 P.2d 708 (1997). The evidence must affirmatively establish that the inferior degree offense was committed. Fernandez-Medina, 141 Wn.2d at 456. It is not enough that the jury might disbelieve the evidence pointing to guilt. Id.

6

We review the decision not to give an inferior degree offense instruction based on the facts of the case for an abuse of discretion. State v. Picard, 90 Wn. App. 890, 902, 954 P.2d 336 (1998).

For Morales to be entitled to a jury instruction on third degree rape, the evidence must show that Morales committed only third degree rape, to the exclusion of second degree rape. In other words, there must be evidence from which a jury could conclude that D.P. was capable of consent but objected to the rape through words or conduct. No such evidence was presented at trial. Morales testified that D.P. consented to—and enthusiastically initiated—sexual intercourse. In contrast, D.P. testified that she was asleep when Morales penetrated her vagina with his penis. The only other witness who saw what happened was Minnie. But, Minnie saw only that Morales was having sex with D.P. She acknowledged that she did not know if D.P. was sleeping or awake. There was no affirmative evidence that D.P. was capable of consenting when the intercourse began and expressed her lack of consent through words or actions. Thus, the trial court properly refused to instruct the jury on third degree rape.

Morales argues that there was ample evidence of nonconsensual intercourse. But, he supports this argument with only his speculation that he possibly misread D.P.'s cues regarding her level of interest. Such a claim was inconsistent with Morales's trial testimony that D.P. initiated the sexual encounter. And, it would require the jury to disbelieve both his testimony and that of D.P. Without evidence affirmatively establishing the elements of third degree rape,

Morales was not entitled to the inferior degree offense instruction. Morales fails to establish that the refusal to give the instruction was error.

Affirmed.

_Appelwick, J._

WE CONCUR:

_Chun, J._          _Andrus, A.C.J._