IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 87676-7-I |
| | DIVISION ONE |
| WILLIE NATHANIEL BROWN, | UNPUBLISHED OPINION |
| Petitioner. | |

SMITH, J. — In this timely personal restraint petition (PRP), Willie Brown seeks relief from the judgment and sentence imposed following his convictions on multiple counts of rape of a child in the second degree, rape in the second degree, and commercial sex abuse. Brown contends he is unlawfully restrained based on insufficiency of the evidence and ineffective assistance of counsel. We deny his PRP.

## FACTS

We incorporate herein the relevant facts set forth in this court's prior opinion resolving Brown's direct appeal, *State v. Brown*, No. 54285-4-II (Wash. Ct. App. Apr. 19, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054285-4-II%20Unpublished%20Opinion.pdf.

Brown and Heidi Stevens met in 2001 and began a dating relationship. Stevens is the mother of twin daughters T.W.L. and T.A.W., born in 1998. T.A.W. was developmental delayed, and as an adult she had the mental capacity of a child in fourth or fifth grade. Brown had a parental relationship with T.W.L.

and T.A.W., and they referred to him as "dad" or "stepdad."

By the time T.W.L. and T.A.W. were in middle school, Brown began sexually assaulting them and offering them money after each encounter. T.W.L. and T.A.W. separately told their mother what Brown was doing, but she did not believe them. As T.W.L. and T.A.W. got older, the abuse escalated and included incidents Brown initiated while they were asleep. T.W.L. and T.A.W. eventually told several friends what was happening, and in February 2018, T.W.L. reported Brown's crimes to the police. T.A.W. then disclosed to police that Brown had been raping her and that he had assaulted her the day before. After speaking with police, T.W.L. and T.A.W. went to the hospital and were examined by a sexual assault nurse examiner. Brown was arrested the same day.

T.W.L. and T.A.W. testified consistent with the facts above at trial. The friends to whom T.W.L. and T.A.W. disclosed the abuse testified accordingly. Forensic scientist Jennifer Hayden conducted a DNA analysis on samples collected from T.W.L. and T.A.W., swabs from Brown's mouth and penis, and a reference sample obtained from Stevens. Hayden testified that she found DNA other than Brown's on his penis swab and determined that it was 13 times more likely that the other person's DNA was T.A.W.'s than a random person's DNA. Hayden also ruled out that the DNA was Stevens's or T.W.L.'s.

Brown testified that he never engaged in sexual contact with T.A.W. and that he only engaged in consensual sexual contact with T.W.L. after she turned 18 years old. The jury heard recordings of Brown's phone conversations with his family and Stevens, in which he admitted to being "guilty of something."

2

As to T.W.L., the jury convicted Brown of one count of rape of a child in the second degree (count 2), one count of rape of a child in the third degree (count 3), three counts of rape in the second degree (counts 5, 6, and 7), one count of commercial sexual abuse of a minor (count 4), and one count of witness tampering (count 8).  As to T.A.W., the jury convicted Brown of one count of rape of a child in the second degree (count 10), one count of rape of a child in the third degree (count 11), three counts of rape in the second degree (counts 13, 14, and 15), one count of commercial sexual abuse of a minor (count 12), and one count of witness tampering (count 16).  The jury acquitted Brown of one count of rape of a child in the first degree of each victim (counts 1 and 9).  The court imposed an exceptional upward indeterminate sentence of 600 months to life in prison on each count of rape of a child in the second degree and rape in the second degree.

On direct appeal, Brown argued that his convictions for rape in the second degree based on inability to consent (counts 6 and 14) were not supported by sufficient evidence.  Brown also raised claims of double jeopardy, prosecutorial misconduct, ineffective assistance of counsel, and sentencing error.  The court held that insufficient evidence sustained Brown's conviction as to count 14 and that his conviction in count 3 violated double jeopardy, affirmed his remaining convictions, and remanded for resentencing.  Our Supreme Court denied Brown's petition for review.  *State v. Brown*, 200 Wn.2d 1004 (Sept. 7, 2022).

At resentencing, the trial court determined that Brown's offender score had decreased but readopted its findings supporting the exceptional sentence and

3

again sentenced Brown to a minimum of 600 months of incarceration. *State v. Brown*, No. 57729-1-II, slip op. at 2 (Wash. Ct. App. Jan. 30, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057729-1-II%20Unpublished%20Opinion.pdf. The court also imposed a victim penalty assessment (VPA) and commercial sexual abuse of a minor (CSAM) fee. Brown appealed the amended sentence, and the court remanded to strike the VPA and to consider waiving the CSAM fee. Brown's judgment and sentence became final when the mandate terminating review was entered on March 4, 2024. RCW 10.73.090(3)(b).

Meanwhile, Brown filed a pro se CrR 7.8 motion for relief from judgment and a separate motion to dismiss defense counsel. The superior court determined that the matter was not time-barred and transferred both motions to Division Two of this court under CrR 7.8(c)(2) for consideration as a PRP.[1] Division Two referred the petition to a panel of judges for determination on the merits, appointed counsel to represent Brown, ordered supplemental briefing, and transferred the petition to this court to expedite review. *See* RAP 16.11(b); CAR 21(a).

DISCUSSION

"Relief by way of a collateral challenge to a conviction is extraordinary,

---

[1] The superior court initially transferred Brown's CrR 7.8 motion as time-barred. After Brown objected, the appellate court correctly determined that Brown's CrR 7.8 motion was timely and rejected the transfer. *See* RCW 10.73.090(1) (one-year time bar for collateral attacks); *In re Pers. Restraint of Skylstad*, 160 Wn.2d 944, 954, 162 P.3d 413 (2007) (when a direct appeal is remanded for resentencing, the time limit does not begin to run until after the amended judgment and sentence becomes final).

and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). "An appellate court will grant substantive review of a PRP only when the petitioner makes a threshold showing of constitutional error from which he has suffered actual prejudice or nonconstitutional error that constitutes a fundamental defect that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Heidari*, 159 Wn. App. 601, 604, 248 P.3d 550 (2011) (citing *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 812, 792 P.2d 506 (1990)). To carry this burden, a PRP "must be supported by facts or evidence upon which the petitioner's claim of unlawful restraint is based and not solely upon conclusory allegations" or "speculation, conjecture, or inadmissible hearsay." *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999) (citation omitted).

*Sufficiency of the Evidence*

In his supplemental briefing, Brown asserts that insufficient evidence supports his conviction for rape in the second degree against T.A.W. as charged in count 15. We disagree.

Due process "requires the State to prove beyond a reasonable doubt all facts necessary to constitute the crime charged." *State v. Hundley*, 126 Wn.2d 418, 421, 895 P.2d 403 (1995). "When reviewing a claim of insufficiency of the evidence, this court looks to whether, when viewing the evidence in the light most favorable to the State, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *State v. Cook*, 17 Wn. App. 2d 96, 110-11,

484 P.3d 13 (2021). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Credibility determinations are solely for the fact finder and are not reviewable on appeal. *State v. Brockob*, 159 Wn.2d 311, 336, 150 P.3d 59 (2006).

In count 15, the State charged Brown with rape in the second degree of T.A.W. in violation of RCW 9A.44.050(1) "by means of forcible compulsion" or "when the victim was incapable of consent by reason of being physically helpless or mentally incapacitated." As to this count, the court instructed the jury as follows:

> (1) That on or between May 20, 2013 through February 20, 2018, the defendant engaged in sexual intercourse with [T.A.W.];
>
> (2) That the sexual intercourse occurred by either;
>
>   (a) forcible compulsion; or
>
>   (b) when [T.A.W.] was incapable of consent by reason of being physically helpless or mentally incapacitated;
>
> (3) That this act occurred in the State of Washington.
>
> If you find from the evidence that elements (1), (2) and (3) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

Jury Instruction 33.

"Rape in the second degree pursuant to RCW 9A.44.050 is an alternative means crime." *State v. Gene*, 20 Wn. App. 2d 211, 222, 499 P.3d 214 (2021). "Alternative means crimes require an expression of jury unanimity as to which means the defendant used to commit the crime." *State v. Shoop*, 22 Wn. App.2d 242, 250, 510 P.3d 1042 (2022); *State v. Boiko*, 131 Wn. App. 595, 599, 128

6

P.3d 143 (2006). If substantial evidence supports each alternative means, we will infer that the jury based its decision on a unanimous finding. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994). Additionally, when the State presents evidence that a defendant committed multiple acts, any one of which could constitute the charged crime, either the State must elect a specific act on which it will rely for conviction or the trial court must instruct the jury that it must unanimously agree that a specific criminal act has been proved beyond a reasonable doubt. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984); *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009).

The State alleged T.A.W. was "incapable of consent" because she was sleeping at the time of the rape, not because of her developmental disability. T.A.W. testified to two incidents in which Brown assaulted her when she was sleeping. The first incident occurred during the summer of 2016 after T.A.W. graduated from high school. T.A.W. also testified to a second incident that occurred when she was sleeping, but she could not remember when it occurred or any details except that Brown put his penis inside her at some point.

Brown contends that insufficient evidence supports at least one of the alternative means as charged in count 15. Brown points out that the State did not tell the jury which act it was relying on in count 15 except that the incapacitation alternative involved the sleeping incidents. But the court instructed the jurors that they "must unanimously agree" on the act the State proved to support each charge. Read together, the to-convict instruction for count 15 (jury instruction 33) and the *Petrich* instruction (jury instruction 35) required the jury to

7

unanimously agree as to a particular act that constitutes the charge for each count and to find beyond a reasonable doubt that the State proved all the elements set forth in the to-convict instructions. We presume the jury followed those instructions. *State v. Montgomery*, 163 Wn.2d 577, 596, 183 P.3d 267 (2008).

Under RCW 9A.44.050(1)(b), a person is guilty of rape in the second degree "when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person . . . [w]hen the victim is incapable of consent by reason of being physically helpless or mentally incapacitated." *State v. Mohamed*, 175 Wn. App. 45, 60-61, 301 P.3d 504 (2013). RCW 9A.44.010(14)(a) provides in relevant part that the term " 'sexual intercourse' (a) has its ordinary meaning and occurs upon any penetration, however slight, and (b) [a]lso means any penetration of the vagina or anus however slight." Under Washington law, "vagina" encompasses "all of the components of the female sexual organ and not just '[t]he passage leading from the opening of the vulva to the cervix of the uterus.' " *State v. Montgomery*, 95 Wn. App. 192, 200, 974 P.2d 904 (1999) (alteration in original) (quoting *The American Heritage Dictionary of the English Language* (3d Ed. 1992)). A person is "physically helpless" when they are "unconscious or for any other reason is physically unable to communicate unwillingness to an act." RCW 9A.44.010(12). A person who is asleep is physically helpless. *State v. Mohamed*, 175 Wn. App. at 58-59.

As to the first sleeping incident, T.A.W. testified that she woke up and felt

Brown touching her "[o]n [her] legs all the way up" to the "lower part" of her body, which she described as the part "where pee comes out." Brown was "almost on top" of her and "trying to pull [her] pants down." When T.A.W. woke up and realized what was happening, she kicked Brown and pushed him off, but he kept going and was able to get her pants off "even though" she was "still kicking." T.A.W. felt Brown "trying to put" his penis inside "the lower part where pee comes out" and said it "didn't feel comfortable." She testified that Brown ejaculated "inside" her, so she "hurried up and took a bath" in an attempt to avoid getting pregnant.

Brown asserts that T.A.W. could not have been physically helpless during this incident because she was awake and fighting back. But a reasonable fact finder could infer from this testimony that Brown's sexual assault woke T.A.W. up and that she had been asleep when the penetration started. And T.A.W.'s testimony that she woke up to Brown touching her "where pee comes out" supports the element of "sexual intercourse" and "any penetration, however slight." Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences from the evidence, sufficient evidence is in the record to prove that Brown penetrated T.A.W. while she was asleep and therefore "incapable of consent."

Under RCW 9A.44.050(1)(a), an individual is guilty of rape in the second degree when, "under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person . . . [b]y forcible compulsion." Forcible compulsion is defined as "physical force which overcomes

resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." RCW 9A.44.010(3). In the context of rape in the second degree, forcible compulsion means that the force exerted was directed at overcoming the victim's resistance and was more than what is normally required to achieve penetration. *State v. McKnight*, 54 Wn. App. 521, 527-28, 774 P.2d 532 (1989). Although the victim's resistance does not need to be physical, it must be reasonable under the circumstances. *Gene*, 20 Wn. App. 2d at 224.

Brown contends that the State failed to prove forcible compulsion beyond a reasonable doubt, but his arguments are confined to T.A.W.'s testimony about the second sleeping incident. Brown does not dispute that T.A.W.'s testimony in the first sleeping incident was sufficient to support that alternative means. As discussed above, the trial court instructed the jury that it must unanimously agree that a specific criminal act has been proved beyond a reasonable doubt, and we presume the jury did so. We conclude that the State presented sufficient evidence to support both alternative means of rape in the second degree as charged in count 15.

In his pro se motion, Brown also argues that the evidence was insufficient to prove his convictions for rape in the second degree against T.A.W. Brown insists that he did not rape T.A.W. He points out that T.A.W.'s rape kit did not show the presence of male DNA and asserts that the evidence against him is "nothing more than circumstantial." But circumstantial and direct evidence are

accorded equal weight. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Brown also insists that the DNA found on his penis swab must have come from Stevens. But Hayden ruled out that the DNA was Stevens's and determined that it was 13 times more likely to have come from T.A.W. than a random person.

Brown also asserts that T.A.W.'s mother and brother did not support her claims because they knew she was lying. But our role as the reviewing court is not to reweigh the evidence and substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, we defer to the trier of fact's resolution of conflicting testimony, evaluation of witness credibility, and decisions concerning the persuasiveness of evidence. *State v. A.X.K.*, 12 Wn. App. 2d 287, 298, 457 P.3d 1222 (2020). Brown has not shown that the evidence was insufficient to support his challenged convictions.

Lastly, Brown asserts that the trial court's failure to give an instruction based on WPIC 4.01, the approved pattern instruction on reasonable doubt, mandates automatic reversal. But the record plainly shows that the court did in fact give such an instruction (jury instruction 2). This claim fails.

*Motion to Dismiss Defense Counsel*

Brown also moved "for the dismissal of present defense counsel" based on "conflict of interest." But in its transfer memorandum, the State informed the superior court that Brown's counsel has retired and will no longer represent Brown. Accordingly, Brown's motion appears to be moot. *See In re Pers. Restraint of Blaylock*, 30 Wn. App. 2d 569, 546 P.3d 86 (2024) ("An issue is moot

11

if we can no longer provide effective relief.").

To the extent Brown's motion is interpreted to allege that he received ineffective assistance of counsel, this claim fails. The Sixth Amendment guarantees the right to effective assistance of counsel. U.S. CONST. amend. VI; *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 348, 325 P.3d 142 (2014). A defendant claiming ineffective assistance of counsel must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). This court strongly presumes that trial counsel's performance was reasonable and the defendant bears the burden to overcome that presumption. *State v. Manajares*, 197 Wn. App. 798, 814, 391 P.3d 530 (2017). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Prejudice occurs when, but for the deficient performance, a reasonable probability exists that the outcome would have differed. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Because both prongs must be met, a failure to satisfy either prong ends the inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

To show a violation of the Sixth Amendment right to counsel based on a conflict of interest, a defendant must establish that "an actual conflict of interest adversely affected his lawyer's performance." *State v. Regan*, 143 Wn. App. 419, 427, 177 P.3d 783 (2008). " 'An actual conflict of interest exists when a defense attorney owes duties to a party whose interests are adverse to those of the defendant.' " *State v. Kitt*, 9 Wn. App.2d 235, 244, 442 P.3d 1280 (2019)

12

(quoting *State v. White*, 80 Wn. App. 406, 411-12, 907 P.2d 310 (1995)). A conflict over trial strategy does not equate to a conflict of interest implicating the Sixth Amendment. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 722, 16 P.3d 1 (2001).

Here, Brown does not allege that defense counsel actively represented conflicting interests. Instead, he contends that the conflict of interest arose from "the dereliction of defense counsel's duties." Brown's claims are not sufficient to overcome the strong presumption that trial counsel's performance was reasonable.

Brown asserts that defense counsel conducted pretrial interviews in which witnesses gave statements that would have exonerated Brown if defense counsel had confronted them on the stand at trial. Brown contends that defense counsel allowed the witnesses to change their testimony from what they originally told defense counsel. But a personal restraint petition must be supported by factual evidence, rather than on conclusory allegations, speculation, and conjecture. *In re Pers. Restraint of Pauley*, 13 Wn. App. 2d 292, 309, 466 P.3d 245 (2020). For allegations "based on matters outside the existing record, the petitioner must demonstrate that [they have] competent, admissible evidence to establish the facts that entitle [them] to relief." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Brown's self-serving assertions are insufficient to establish a basis for relief.

Brown also claims that defense counsel should have obtained an expert to rebut the State's evidence. But Brown does not specify how he believes they

would have testified, so he cannot show trial counsel was deficient for not calling them. *Cf. Rice*, 118 Wn.2d at 886 ("If the petitioner's evidence is based on knowledge in the possession of others, he . . . must present their affidavits or other corroborative evidence."). Brown also asserts that defense counsel should have moved to suppress unspecified evidence on the ground that the State introduced the evidence "at the last minute." Where ineffective assistance is predicated on a failure to object, the defendant must show that representation "fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different if the evidence had not been admitted." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Brown has not made this showing. Nor does he allege, much less establish, prejudice resulting from the alleged deficiencies.

We deny Brown's PRP.

_____

WE CONCUR:

_____     _____, ACJ