[No. 41493-3-I.   Division One.   April 19, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. ROBERT MONTGOMERY, *Appellant*.

---

[7]*Walden*, 69 Wn. App. 183.

[8]*Id.* at 184.

[9]*Id.* at 188.

[10]*Id.*

*Michael L. Mittlestat* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Charles Lind, Deputy*, for respondent.

BAKER, J. — Robert Montgomery was convicted of first degree child rape. The trial court found that the victim, A.M., was available to testify under RCW 9A.44.120(1). A.M. testified at trial, but much of the State's case was proven through hearsay statements that were admitted under the child hearsay rule.[1]

Montgomery argues on appeal that A.M. did not testify as required by RCW 9A.44.120(1); that the trial court abused its discretion in restricting his closing argument to the jury concerning the definition of sexual intercourse; and it was reversible error for the prosecutor to argue that the jury should acquit only if it concluded that A.M. was not telling the truth.

We determine that the testimony of the child victim minimally met the statutory requirement of testifying at trial. We further conclude that the trial court did not commit error in its ruling regarding final argument, and no

---

[1]RCW 9A.44.120(1).

prosecutorial misconduct occurred during final argument. We therefore affirm the conviction and sentence.

I

A.M.'s mother testified that while getting her ready to go to school, A.M. told her that "this man at the school put his finger up her." A.M. described the place where Montgomery touched her as her "private." A.M. told her it was the man who had passed out backpacks at school. She had pointed him out to her a week earlier on the street. A.M. told her mother that it hurt to go to the bathroom. A.M. said that she was having dreams about "that man" at night, that his hands were "all dirty and slimy" and that "[s]he thought he was going to kiss her on her private." A.M. also told her mother that in addition to the vaginal area penetration, "he put his finger up my behind, too[.]"

Montgomery was employed by A.M.'s school. On the day in question, one of the teachers, Sheila Florence, witnessed Montgomery come from behind the partitioned nurse's area with A.M. Montgomery asked Florence where the bandages were, and she bandaged an abrasion A.M. had suffered while playing on the school grounds.

A.M.'s mother took her to the principal's office upon arriving at school. A.M. responded to his questions about the rape. The principal's brother came into his office, and she also told him what had happened.

The principal testified that A.M. told him that the man that helped with the backpacks had touched her. A.M. repeated that he had hurt her. She accurately described Montgomery to him. He testified that A.M. repeated the information to his brother and the responding police officer when they came into his office.

A.M. testified that she told the police officer the truth about what happened. The officer testified that A.M. told her that the person mopping the floors volunteered to help her get a bandage. "He took her behind this partition and told her to 'pull down her pants and panties.' He said, 'I

need to make sure you're not hurt down there.' " A.M. told Emerson that he had "stuck something up" and then she pointed to her bottom. A.M. told Emerson that it hurt very badly.

A.M. testified at trial. She answered routine questions demonstrating her intelligence and understanding of telling the truth. She testified that she had seen Montgomery before and the same day she had hurt herself. She had fallen on the playground and went to the nurse for a bandage. He was in the nurse's office when she went there. A.M. testified that the man who gave her a backpack was in the courtroom.

A.M. answered "I can't remember" and "I'm not telling" when asked what happened when she went in the room. She said something happened in there that she did not want to talk about. A.M. testified that the next day she told her "mom and Brother Doug [the principal] and somebody else" the truth about what happened.

Regarding the sexual contact, the prosecutor asked A.M. the following questions:

Q. Do you remember if I asked if you were touched on the inside or on the outside?

Q. Do you remember when I asked you that?

A. Yes.

Q. Do you remember what you told me?

A. Yes.

Q. Which one was it?

A. Inside.

Q. Do you remember me asking how it made you feel?

A. No.

Q. How did that make you feel if you were touched inside?

A. Mad.

Montgomery's counsel cross-examined A.M. He did not ask her about the sexual contact.

A.M. was taken to the hospital to be examined. Dr. Eldred testified that during her examination of A.M., A.M. told her specifically that she was getting examined because a man who was sweeping the nurses office "pulled down my panties and touched my privates with his hand." When the doctor asked her to define her "privates" she pointed to her general genital area.

During the vaginal exam, Dr. Eldred discovered a degree of erythema that showed inflammation on the right side of the inner labium. The doctor said the finding was nonspecific in that it was "consistent with what [A.M.] told [her] has happened, but is not definitively indicated by it." She said that there are almost no definitive findings of sexual assault in small children. The doctor testified that the redness could be the result of tight underwear, masturbation, or poor hygiene, however these causes would probably cause "generalized irritation" and not the specific redness A.M. had. Further, the doctor testified that A.M.'s underwear fit appropriately, and there was no evidence of poor hygiene.

The judge instructed the jury:

> A person commits the crime of rape of a child in the first degree when that person has sexual intercourse with another person who is less than twelve years old and who is not married to the perpetrator and the perpetrator is at least 24 months older than the victim.

The judge defined sexual intercourse for the jury as:

> any penetration of the vagina or anus, however slight, by an object, when committed . . . on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes.

In his closing argument, the prosecutor repeated the sexual intercourse definition: "penetration, however slight, in the vagina or the anus by any object."

Montgomery's counsel emphasized in closing that A.M.

was injured in the "labia [which] are not the vagina." The prosecutor objected and, after a sidebar conference, defense counsel restated that "[t]he area where the redness occurred is adjacent to the vaginal opening." Later he stated "[s]exual intercourse requires penetration, either of the anus or the vagina."

## II
### Child Hearsay Evidence

■ The standard of review in this context is abuse of discretion, with great deference being given to the trial court's determination.[2] RCW 9A.44.120 conditionally permits admission of "child hearsay" evidence:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another . . . not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings . . . if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.[3]

The hearsay evidence was admitted in this case on the basis of section 2(a) of the statute. Montgomery argues that the statutory requirements were not met because A.M. did not testify about the sexual contact. He argues that A.M. "was lead by the prosecutor to admit that she had told him in a

---

[2]*State v. Young*, 62 Wn. App. 895, 902-03, 817 P.2d 412 (1991); *State v. McKinney*, 50 Wn. App. 56, 61, 747 P.2d 1113 (1987), *review denied*, 110 Wn.2d 1016 (1988).

[3]RCW 9A.44.120.

pretrial interview she had been touched 'inside,' which made her mad." He argues that she "did not elaborate on the meaning of this statement, or relate it to anything that occurred at school." Further, he argues that A.M.'s testimony did not cover the elements of the crime charged, and she never directly identified Montgomery in her testimony. For these reasons, he believes that his constitutional confrontation rights were violated.

Montgomery relies on *State v. Rohrich* to support his argument.[4] In *Rohrich*, the victim, H.H., "was not asked about and did not testify about any alleged abuse."[5] The court held that the Confrontation Clause "requires the State to elicit the damaging testimony [concerning the out-of-court declaration] from the witness so the defendant may cross-examine if he so chooses."[6] The court explicitly defined "testifies" in the statute as "the child takes the stand and describes the acts of sexual contact alleged in the hearsay."[7]

Although A.M. did not describe the sexual contact in great detail, she testified beyond incidental details. She sufficiently identified Montgomery, stated that he was alone with her in the nurse's office on the occasion of her playground injury, that he touched her "inside," and that she had told others the truth about what happened. Although it is a close question, we conclude that A.M.'s testimony was sufficient under *Rohrich* to meet the statutory requirement. The testimony was sufficiently detailed to permit meaningful cross-examination. There was no abuse of discretion in allowing the hearsay evidence.

### Limitation of Final Argument

RCW 9A.44.073(1) defines "Rape of a child in the first

---

[4]132 Wn.2d 472, 939 P.2d 697 (1997).

[5]*Id.* at 474.

[6]*Id.* at 478.

[7]*Id.* at 481.

degree" as "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.010(1) defines "sexual intercourse" for purposes of sex offenses, as:

(1) 'Sexual intercourse'

(a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another. . . .

Montgomery argues that it was reversible error for the trial court to prevent him from differentiating the vagina from the remainder of the female sexual organ, and arguing that the evidence established only penetration of the labia. He prefers a narrow definition of vagina which would require penetration into the vaginal canal in order to meet the definition of sexual intercourse.

Generally "[s]tatutes are to be construed according to their evident intent and purpose."[8] Further, "[w]ords in statutes are to be understood in their ordinary and popular sense."[9] With these rules of construction in mind, we read subsections (a) and (b) of RCW 9A.44.010(1) together. In this context, vagina means all of the components of the female sexual organ and not just "[t]he passage leading from the opening of the vulva to the cervix of the uterus. . . ."[10]

The right side of A.M.'s labia minora was injured. The

---

[8]*State v. Rinkes*, 49 Wn.2d 664, 667, 306 P.2d 205 (1957).

[9]*State v. Cain*, 28 Wn. App. 462, 464, 624 P.2d 732 (1981).

[10]THE AMERICAN HERITAGE DICTIONARY 1970 (3d ed. 1992) (definition of "vagina"). *See also State v. Snyder*, 199 Wash. 298, 91 P.2d 570 (1939); *State v. Bishop*, 63 Wn. App. 15, 19, 816 P.2d 738 (1991) ("Under RCW 9A.44.073, the State must prove that the defendant penetrated, at a minimum, the lips of the victim's sexual organs." Citing *Snyder*, 199 Wash. at 300), *review denied*, 118 Wn.2d 1015 (1992); WPIC 45.01.

dictionary definition of labia minora (providing guidance into the popular and ordinary meaning), defines the term as "[t]he two thin inner folds of skin within the vestibule of the vagina enclosed within the cleft of the labia majora[.]"[11] Clearly the labia minora are part of the statutory definition of vagina. The trial court was correct in its ruling.

## Prosecutorial Misconduct

Montgomery argues that the prosecutor engaged in misconduct during closing argument. The following language is at issue:

> . . . Finger, hand, is that inconsistent? He pulled down my panties. He put his hand in my pants. Pulled down my pants. Is that the type of inconsistencies that tell you, oh, hey, this victim is lying because, you see, we sometimes forget that's the real final question. What is the truth, not did one witness say finger and one witness said hand. What is the truth?

> You should only be acquitting, based on inconsistencies, if you believe those inconsistencies suggest that the victim is not telling the truth.

> Mr. Witchley [defense counsel]: Objection.

> The Court: It's whether the State proves it beyond a reasonable doubt, counsel.

> Mr. Lind [prosecutor]: Let me rephrase, just to clarify.

> What I mean is that we are seeking the truth. We are seeking the truth, not limiting you to the reasons you can acquit. But what I want to draw your attention to is that this is the pursuit of truth. And it is not enough to say finger, hand, pants, panties. Does that suggest that the victim is not telling the truth or do you have an abiding belief, despite these differences, of the truth of the charge? That's the ultimate question. And, if so, the law says you are convinced beyond a reasonable doubt. The State asks you to find the defendant guilty as charged.

---

[11]THE AMERICAN HERITAGE DICTIONARY 1004 (3d ed. 1992) (definition of "labia minora").

■ In order to hold that the prosecutor's comments were misconduct, we must find that they were both improper and that there is a substantial likelihood that they affected the jury despite the court's admonitory comment.[12] Montgomery bears the burden of establishing the impropriety and prejudicial impact when considering the entire context of the record and circumstances at trial.[13]

■ In the present case, the prosecutor's comments were not improper because they were made in rebuttal and tied directly to defense counsel's emphasis on alleged inconsistencies in the child's. statements. Further, "[g]reater latitude is given in closing argument than in cross examination" and counsel is entitled to "comment on a witness's veracity or invite the jury to make reasonable inferences from the evidence so long as counsel does not express a personal opinion."[14] Finally, we note that the trial court made an appropriate admonitory comment in response to the objection.

Affirmed.

BECKER and COX, JJ., concur.

Reconsideration denied May 20, 1999.

Review denied at 139 Wn.2d 1006 (1999).

---

[12]*State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991).

[13]*Id.*; *State v. Barrow*, 60 Wn. App. 869, 877, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991); *State v. Graham*, 59 Wn. App. 418, 425-26, 798 P.2d 314 (1990).

[14]*State v. Stover,* 67 Wn. App. 228, 232, 834 P.2d 671 (1992), *review denied*, 120 Wn.2d 1025 (1993).