IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34220-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROGER WILLIAM FLOOK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Roger Flook appeals on numerous grounds his convictions for child rape and child molestation. We agree with his contention that a law enforcement officer improperly vouched, during the officer's testimony, to the credibility of the victim and the lack of veracity of Flook. We remand for a new trial.

FACTS

On July 24, 2010, Roger William Flook married Martha Flook. Martha has two children from a prior marriage, A.S. and J.S. J.S. suffers from a seizure disorder. When startled, J.S.'s muscles grow rigid, his body curls, and he places his arms behind his head.

In 2014, Martha and Roger Flook resided in Endicott. On June 6, 2014, Martha and Roger, accompanied by A.S. and J.S., attended a marriage seminar in Clarkston. The

parents failed to properly plan for the trip. A.S. and J.S. lacked pajamas and bathing suits, and J.S. lacked his seizure medication.

During the Clarkston marriage seminar, all four members of the family stayed in one room with one king-size bed at a motel. They laid in bed in the following order: Roger, A.S., J.S., Martha.

A consuming cold afflicted Martha Flook during the night of June 6. She struggled to sleep and her coughing, combined with J.S.' lack of medication, caused J.S. to suffer seizures. At an unidentified time, Martha arose from bed, sat in a chair near Roger, and remained in the chair for the remainder of the night. J.S. seized throughout the night.

A.S. began the night laying on her back. At some unidentified moment, A.S. felt something under her pants. The pressure under her clothes released, but, three to five seconds later, returned. She sensed a hand further down her pants. The hand retreated again. A.S. later identified the hand as Roger Flook's hand. Roger's hand slid inside her underwear a third time. A.S. felt the hand "touch [her] area." Report of Proceedings (RP) at 115. After the hand retreated again, A.S. rolled onto her side and positioned her arm between her legs. Roger grabbed her arm and whispered "come on." RP at 116. A.S. softly cried. When Roger asked her what was wrong, A.S. did not respond.

In August 2015, A.S. attended summer camp in Moscow, Idaho. On her last day at camp, A.S. disclosed, to C.S., a nine-year-old girl A.S. met at camp, the touching by

2

Roger Flook in her private area. C.S. reported A.S.'s disclosure to C.S.'s mother. Aaron Sheridan, the father of both A.S. and J.S., resides in Pullman. After searching for Aaron Sheridan's location, C.S.'s mother contacted Sheridan and informed him of A.S.'s disclosure. Thereafter Sheridan informed Martha Flook of A.S.'s allegations.

Whitman County Sheriff Brett Myers conducted most of the investigation into A.S.'s allegations against Roger Flook. Myers interviewed both A.S. and Flook. When Myers asked Flook if he touched A.S.'s private parts, Flook denied any such touching. Flook explained that J.S. suffered from seizures that night and he reached across A.S. to prevent J.S. from flailing.

PROCEDURE

The State of Washington charged Roger Flook with one count of child molestation in the first degree and one count of child rape in the first degree. Before trial, Flook's attorney filed motions in limine to preclude, among other things, the State from mentioning Flook's criminal history, earlier time in prison, and use of controlled substances. The State responded that mention of Flook's earlier prison stay held relevance because Flook's release date from incarceration constituted an important event in A.S.'s life and a date from which A.S. measured other events.

A third motion in limine sought to preclude:

> Any claims of conduct not directly related to the alleged incidents of June 6, 2014, including claims that the defendant talks about inappropriate things, showed internet images, including anime characters, used profanity,

3

discussed finding a sex toy in [A.S.'] mother's drawer, that defendant spanked [A.S.] on her bottom, that defendant asked [A.S.] to sit on his lap in a car in the driveway of their home in Endicott, Washington, and the claim that the defendant has kissed [A.S.] on the neck.

Clerk's Papers (CP) at 10. Roger Flook based his third motion on ER 404. Flook argued that the conduct mentioned in the motion, assuming any occurred, happened after June 6, 2014, and thus bore no probative value as to whether he committed the charged crimes. Flook contended the only purpose for testimony of such behavior would be to tag him as a bad person. The State argued the evidence demonstrated his lust toward A.S. and thus the trial court should admit the evidence under the second sentence of ER 404(b).

The trial court granted Roger Flook's motion to exclude evidence of drug use, Flook's time in prison, and his release date from prison. The trial court denied the motion to exclude testimony of other sexually inappropriate touching of A.S. by Flook. The trial court reserved ruling on the latter motion at the conclusion of oral argument and thus rendered no comments on the merits of the motion then. The trial court later entered a written order that declared:

> Motion to Exclude Sexually Inappropriate Conduct Directed Toward [A.S.]
> This motion is denied. The proffered evidence, if believed, has a strong tendency to demonstrate a lustful disposition toward the alleged victim. It also tends to show motive, intent, knowledge, and absence of mistake or accident.

CP at 39 (boldface omitted).

4

At trial, Whitman County Sheriff Brett Myers, who conducted the investigation of A.S.'s allegations, testified extensively. In response to a question about Flook's demeanor during Myers' first interview with him, Myers testified:

> Mr. Flook, it was about three o'clock in the afternoon. Mr. Flook appeared to be very tired, possibly—possibly under the influence of a substance, rolled his eyes quite a bit, couldn't keep his eyes open sometimes, acted—it seemed like he had just been rolled out of bed almost and often times questions needed to be asked a couple of times in order to elicit an answer. Yeah—

RP at 51.

On cross-examination, defense counsel questioned Sheriff Brett Myers about inconsistencies in A.S.'s statement. Counsel also asked, "[w]ould you agree with me that girls are not always telling the truth?" RP at 60. The following colloquy then occurred:

> MYERS: Are you talking about, in what context?
> LEDGERWOOD [Defense Counsel]: When they make sexual abuse allegations.
> MYERS: In by far and away the vast majority of the cases I have done they are telling—they're not making it up.
> LEDGERWOOD: Are there cases where they are making it up?
> MYERS: I've had one or two out of hundreds.

CP at 61.

The State, on redirect examination, elicited testimony from Sheriff Brett Myers regarding the veracity of the statements of A.S. and Roger Flook. Sheriff Myers gave the following testimony on redirect:

> [The State]: Mr. Ledgerwood was asking you about experience in prior cases with girls who would make these things up and you indicated

5

the vast majority were determined to be founded. As part of your training, in both general law enforcement and sexual abuse to identify signs of deception during an interview?

MYERS: Yes.

[The State]: Can you describe that briefly to the jury?

MYERS: Well, certainly any time that you are interviewing someone, just like establishing whether a person knows the truth from the untruth, or having some sort of grandiose statement. Sometimes what you do is you ask questions several different ways to make sure that what they're saying is consistent and then you also take into consideration their body language, their demeanor, to help determine whether or not a statement on its face value is true. In this particular case, all of her body language was consistent with someone, based on my training and experience that was telling the truth. There was nothing that was overly grandiose, so what I mean by that is sometimes when people are explaining something that is almost fantastical and unbelievable, then you start having to question is that really the way it is or when people describe things that are in a way that's much more in the a way we see things happen, then you start—you look at a statement different based on answers and then again, you come back around and ask different questions and you look to see if there's consistency and then compare that consistency with other statements that other witnesses might give down the road.

[The State]: So, during the course of the interview, whether it's a victim of sex or a witness or otherwise, you're looking for possible signs of deception?

MYERS: Yes.

[The State]: And you didn't see any or did you see any with A.S.?

LEDGERWOOD: Your Honor, the question has been asked and answered. He's really asking the witness, does he believe her or not.

[The State]: No, I'm asking whether he saw—it's an appropriate question.

JUDGE: Let's not talk over the top of each other gentlemen.

LEDGERWOOD: That's the province of the jury to decide if she's telling the truth or not and the question has been asked and answered. He was asked if he saw signs of deception and he answered that.

[The State]: Your Honor, he had not answered that question. He, and it is, he is not being asked whether he believed the witness or whether the witness was credible, just that did he observe any signs of deception when interviewing A.S.

6

JUDGE: I'll agree with the State. Go ahead.

[The State]: Did you observe any signs of deception in your interview with A.S.?

MYERS: No I did not.

RP 69-71.

[The State]: . . . Now, during your interview with Mr. Flook, did you observe any signs of deception?

MYERS: What I would consider based on my training and experience, I felt as though the answers—

[The State]: Let me, not your opinion—

MYERS: Okay—

[The State]: As to the truth or the falseness of the statements he made. Did you observe any signs or signals to you that there may be deception?

MYERS: Inconsistencies from what other people had indicated would be that there were some inconsistencies with what he said.

[The State]: How about the lack of memory about the general subject matter when you initially inquired.

MYERS: So, often times when asking people questions if something as memorable as maybe going to a marriage counseling retreat when you ask that, that would be something most people would be like oh yeah, I remember going to that a year ago. It's not a guarantee, but in this particular case it's a very important fact of the case and when one of the very important facts of the case is when you ask that question and there's not an immediate memory and in fact it's a memory that has to be jarred and then they remember that. *To me that's a sign of trying to be evasive in providing an answer, which is a sign of deceptiveness.* So, when we look for evasiveness in answering, having to repeat questions several times that are very direct and simple questions, *often times those are indications that a person is being deceptive and in the interview with Mr. Flook I did see that.*

[The State]: And contrasting that with his fairly quick memory about the sleeping arrangement and the order of people in that bed on that night, did that—did that strike you?

MYERS: Um to some degree, yes absolutely, because again not having a memory that it needed to be jarred and then on some of the other questions with very quick responses, did you ever do this, no. Did you ever

7

do this, no. Some of the questions simply could have, to just say no would tell me that a person has a very good memory if they are just absolutely sure that didn't happen, but to not be able to remember a trip to the hotel in Clarkston would be an example of.

[The State]: So, remember or not remembering the general event but then remembering details immediately about that event?

MYERS: Like sleeping arrangement, where everybody slept.

[The State]: Or—

MYERS: Reaching over specifically not being able to remember going to the hotel, but then once being reminded being able to remember that during the night when there was a seizure that they reached over to stop the flailing of the arms. Those are, I guess sometimes you look for convenient memories or convenient losses of memory, as a deceptive answer.

[The State]: Or the—him not remembering her sitting on his lap in the vehicle but then remembering he terminated the contact by needing to go to the bathroom?

MYERS: Right.

RP at 73-75 (emphasis added).

A.S. testified about the alleged rape and molestation. She said:

A.S.: Well, I felt it touch my area and so I felt uncomfortable.

[The State]: By area what are we—what are you talking about, what do you mean by your area.

A.S.: Like—

. . . .

[The State]: So, when you're talking about—when you're talking about are you talking about outside in the front at this point?

A.S.: Yeah.

RP at 115-16.

[The State]: From your sex ed class do you know what labia are?

A.S.: No.

[The State]: Did it go down into the area where you go potty?

A.S.: Just a tiny bit and that was yeah just like not even much, no?

8

[The State]: Like when you say not even much, can you explain that?

A.S.: Like maybe just a tiny bit of a fingertip.

[The State]: And did that go inside the opening or just—can you explain?

A.S.: Not exactly, just—no I can't really explain it.

[The State]: Can you show me with your fingers.

A.S.: Like just like that.

[The State]: Can you demonstrate it? Hold it up, I'm sorry.

A.S.: Just like this.

[The State]: So, just inside the folds, in the—the—

A.S.: Mmm hmm.

[The State]: Split there. How about further into the, you know what your vagina is?

A.S.: No.

[The State]: Not, you mean no you don't know or no, not in that far?

A.S.: Not in that far.

RP at 117-18.

A.S. testified about other incidents when Roger Flook acted inappropriately. He showed her anime porn and talked to her about sex. She sat on his lap. Flook spanked her randomly.

Nicole Konen A.S.'s counselor, declared during trial:

[The State]: Did [A.S.] indicate to you a timeframe when this [touching] had happened?

KONEN: Right after he got out of jail.

[Defense Counsel]: I'm going to object and ask that that part of the answer be stricken.

JUDGE: That will be stricken.

RP at 216.

[Defense Counsel]: And so [A.S.] tells you for the first time something that she said happened fourteen months earlier.

9

> KONEN: Right.
>
> [Defense Counsel]: Did you understand the date to be June of 2014.
>
> KONEN: I did not know the date. I just knew it was sometime after and I didn't know when Roger was even in jail, so I—
>
> [Defense Counsel]: Your Honor, I'm going to ask again that any reference to jail be stricken.
>
> KONEN: That was the only date I had.
>
> [Defense Counsel]: And the witness be instructed.
>
> JUDGE: That will be stricken and you're not to make reference to any kind of jail or anything associated about that.

RP at 224.

Roger Flook did not testify at trial. The jury found Flook guilty of child molestation in the first degree and child rape in the first degree.

## LAW AND ANALYSIS

On appeal, Roger Flook argues that the trial court erred by denying his motion for mistrial following Nicole Konen's violation of the court's order in limine precluding mention of Flook's time in jail, by admitting opinion testimony from Sheriff Brett Myers, and by admitting testimony of other sexual misconduct with A.S. Because the State contends that Roger Flook's trial counsel did not object to the testimony of Brett Myers, Flook contends he suffered ineffective assistance of counsel. According to Flook, counsel also performed ineffectively by failing to request a limiting jury instruction with regard to the evidence of other sexual misconduct. Finally, Flook contends cumulative error deprived him of a fair trial.

10

We hold that the trial court committed error by allowing Sheriff Brett Myers to testify to the veracity of Roger Flook and A.S. and that such error was harmful. Since we do not expect a witness to violate the trial court's order in limine during a second trial, we do not address Flook's assignment of error based on Nicole Konen's violation of the order. We also need not address Flook's contention of cumulative error and ineffective assistance of counsel. Because the issue of evidence of Flook's other touching of A.S. will likely arise on a retrial, we address this third assignment of error.

## Sheriff Brett Myers' Testimony

Roger Flook contends the trial court erred by admitting testimony from Sheriff Brett Myers, in which Myers opined about Flook's deceptiveness and A.S.'s truthfulness. Flook argues that this testimony embraced the ultimate issue of guilt and thus reaches constitutional magnitude. The State argues that, without conceding inadmissibility of the testimony, Flook failed to preserve the issue. It contends that counsel only objected on the basis that the question had previously been asked and answered and that Myers' indistinct statements do not attain constitutional magnitude. The State does not argue that Flook's earlier questioning of Sheriff Myers about some girls fabricating stories opened the door for testimony concerning the credibility of A.S.

11

*Testimony about A.S.*

We distinguish between testimony from Sheriff Brett Myers about A.S. and the sheriff's testimony about Roger Flook. We must first determine if Flook objected to Myers' testimony about A.S.'s veracity.

ER 103 governs rulings on evidence; it reads:

> (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike is made, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

On the one hand, an objection that does not specify the particular ground on which it is based is insufficient to preserve the question for appellate review. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). On the other hand, all that is required of any objection to evidence is that the objection be sufficiently clear and definite so that the trial court will understand the reason for the objection. *Walley v. La Plata Volunteer Fire Department*, 368 S.W.3d 224, 232 (Mo. Ct. App. 2012).

Roger Flook's defense counsel objected to Sheriff Myers' testimony:

> Your Honor, the question has been asked and answered. He's really asking the witness, does he believe her or not.

RP at 71. In his next comments to the court, before Myers answered the question, counsel reiterated:

> That's the province of the jury to decide if she's telling the truth or

not and the question has been asked and answered.

RP at 71. We disagree with the State's contention that the objection did not suffice. Counsel's comments notified the trial court that Flook objected to the testimony because a witness may not opine on the credibility of a witness.

Because the issue was preserved, we address directly the merits of Roger Flook's claim that the trial court erroneously allowed testimony from Sheriff Brett Myers that vouched for the credibility of A.S. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668, 230 P.3d 583 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Salas v. Hi-Tech Erectors*, 168 Wn.2d at 668-69. A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts. *In re Detention of Duncan*, 167 Wn.2d 398, 403, 219 P.3d 666 (2009). We conclude the trial court applied the wrong legal standard when overruling Flook's objection to Brett Myers' testimony.

No reliable test for truthfulness exists, such that a witness is not qualified to judge the truthfulness of a child's story. *United States v. Azure*, 801 F.2d 336, 341 (8th Cir. 1986); *State v. Dunn*, 125 Wn. App. 582, 594, 105 P.3d 1022 (2005). This rule is but a more specific application of the general rule that no witness may give an opinion on another witness's credibility. *State v. Neidigh*, 78 Wn. App. 71, 76-77, 895 P.2d 423

(1995); *State v. Wright*, 76 Wn. App. 811, 821-22, 888 P.2d 1214 (1995); *State v. Suarez-Bravo*, 72 Wn. App. 359, 366, 864 P.2d 426 (1994); *State v. Padilla*, 69 Wn. App. 295, 299, 846 P.2d 564 (1993); *State v. Walden*, 69 Wn. App. 183, 186-87, 847 P.2d 956 (1993); *State v. Smith*, 67 Wn. App. 838, 846, 841 P.2d 76 (1992); *State v. Stover*, 67 Wn. App. 228, 231, 834 P.2d 671 (1992); *State v. Casteneda-Perez*, 61 Wn. App. 354, 362-63, 810 P.2d 74 (1991); *State v. Barrow*, 60 Wn. App. 869, 875, 809 P.2d 209 (1991). Lay opinion of the truthfulness of another is not helpful within the meaning of ER 701, because the jury can assess credibility as well or better than the lay witness. *State v. Carlson*, 80 Wn. App. 116, 123, 906 P.2d 999 (1995).

In most sexual abuse cases, the respective credibility of the victim and the defendant is a crucial question because the testimony of each directly conflicts and the two are the only percipient witnesses. *State v. Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992); *State v. Fitzgerald*, 39 Wn. App. 652, 657, 694 P.2d 1117 (1985). Therefore, declaring the victim to be telling the truth in essence opines that the defendant is guilty. Declaring the defendant to be prevaricating also in essence opines that the defendant is guilty. Opinions on guilt are improper whether made directly or by inference. *State v. Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014); *State v. Montgomery*, 163 Wn.2d 577, 594, 183 P.3d 267 (2008).

Sheriff Brett Myers did not directly testify that A.S. told the truth when describing Roger Flook's touching her genitalia. Myers did not explicitly state that he believed

14

A.S.'s allegations. Instead, Myers told the jury that all of A.S.'s body language was consistent with telling the truth. Conversely, according to Myers, A.S. gave no signs of deception.

The Washington Supreme Court has addressed whether testimony of a witness concerning the reliability of statements of another witness constitutes impermissible vouching. The Supreme Court wrote:

> In determining whether such statements are impermissible opinion testimony, the court will consider the circumstances of the case, including the following factors: (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.

*State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007) (internal quotation marks omitted).

We address these five factors with respect to Sheriff Brett Myers' comments about A.S. Testimony from a law enforcement officer regarding the veracity of another witness may be especially prejudicial because an officer's testimony often carries a special aura of reliability. *State v. Kirkman*, 159 Wn.2d at 928. As to the second factor, Sheriff Myers essentially told the jury that A.S. told the truth. More importantly, Myers introduced his testimony by mentioning his training in deception detection and couched his opinion of A.S.'s truthful mannerism as based on his experience and training. In short, Myers qualified himself and testified as an expert on the credibility of witnesses.

We distinguish this appeal from *State v. Kirkman*, 159 Wn.2d 918 (2007), wherein the Washington Supreme Court approved the State's questions regarding the competency protocol that police officers follow with child witnesses. The court observed that the protocol functionally coincided with the oath every witness takes before testifying. In *State v. Montgomery*, 163 Wn.2d 577 (2008), the state Supreme Court reiterated an observation from *Kirkman*, that to avoid inviting witnesses to express their personal beliefs, one permissible and perhaps preferred way is for trial counsel to phrase the question "is it consistent with" instead of "do you believe." *State v. Montgomery*, 163 Wn.2d at 592. Sheriff Brett Myers' testimony follows this formula. Nevertheless, his testimony went beyond the formula.

The third *Kirkman* factor is the nature of the suit. Our appeal involves sexual touching of a child. Cases involving child sex abuse inevitably render the child's credibility a central issue. *State v. Kirkman*, 159 Wn.2d at 933. In most sexual abuse cases, the respective credibility of the victim and the defendant is a crucial question because the testimony of each directly conflicts and the two are the only percipient witnesses. *State v. Alexander*, 64 Wn. App. at 154 (1992); *State v. Fitzgerald*, 39 Wn. App. at 657 (1985).

The fourth *Kirkman* factor is the nature of the defense. Roger Flook's defense was a general denial. The defense hinged on emphasizing inconsistencies in A.S.'s testimony and Flook's innocent explanation. Roger Flook did not testify at trial. Nevertheless, the

16

State presented testimony from Sheriff Brett Myers that Flook, during a police interview, denied any touching of A.S.'s private area. Thus, the State indirectly told the jury of Flook's defense.

The fifth and last *Kirkman* factor is other evidence. The State lacked physical evidence and corroborating eyewitness testimony. The State's evidence included A.S.'s testimony and Sheriff Myers' testimony about A.S. and Flook.

All five *Kirkman* factors favor Roger Flook. Therefore, we hold the trial court applied the wrong legal standard when permitting the testimony and thereby abused its discretion. We later discuss the harm of the impermissible vouching.

### *Testimony about Roger Flook*

We agree with the State that Roger Flook did not object below to Sheriff Brett Myers' testimony concerning Flook's behavior during Myers' interview of Flook. Therefore, unless Flook meets the stringent requirements of RAP 2.5, this court will not review this assignment of error.

RAP 2.5(a) formalizes a fundamental principle of appellate review. The first sentence of RAP 2.5 reads:

> **(a) Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely

17

assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944). Sound reasoning lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50; *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1998).

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a) allows an appellant to raise for the first time "manifest error affecting a constitutional

18

right," an exception on which criminal appellants commonly rely. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt. 6, at 218 (8th ed. 2014). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

Washington courts and even decisions internally have announced differing formulations for "manifest error." First, a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d at 688. Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. It is this showing of actual prejudice that makes the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009); *State v. Scott*, 110 Wn.2d at 688; *State v. Lynn*, 67 Wn. App. at 346. A third and important formulation for purposes of this appeal is the facts necessary to

19

adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

For the same reasons that we conclude that Sheriff Brett Myers' testimony concerning A.S.'s credibility constituted impermissible witness vouching, we conclude that Myers' testimony concerning his interview of Roger Flook to constitute proscribed witness vouching. Although Sheriff Myers did not directly declare Flook to be a liar, Myers characterized Flook as deceptive and evasive. Myers accused Flook of possessing a convenient memory and a convenient loss of memory. The purpose of Myers' testimony was to destroy Flook's credibility and defense of a general denial. Myers promoted his testimony as based on his experience and training as a law enforcement officer. The attack on Flook's veracity focused on the heart of the prosecution. To repeat, the State lacked physical evidence and corroborating testimony from a percipient witness.

We also determine the error to be manifest constitutional error. In so holding, we employ the test that manifest constitutional error involves a constitutional error that had practical and identifiable consequences in the trial of the case. *State v. Lynn*, 67 Wn. App. at 345.

Lay witness testimony about the victim's or defendant's credibility implicates the accused's guilt or innocence and thus implicates the accused's right to a fair trial and

impartial jury under article I, section 21 of the Washington State Constitution and the Sixth Amendment to the United States Constitution. *State v. Johnson*, 152 Wn. App. 924, 934, 219 P.3d 958 (2009). The admission of testimony vouching for a witness is constitutional error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. *State v. Quaale*, 182 Wn.2d at 199 (2014); *State v. Kirkman*, 159 Wn.2d at 927 (2007); *State v. Florczak*, 76 Wn. App. 55, 74, 882 P.2d 199 (1994). Vouching testimony is also manifest error because the erroneous evidence actually affects an accused's right to a fair trial. *State v. Johnson*, 152 Wn. App. at 934.

Upon a showing by the appellant of constitutional error, the State must show that the error was harmless beyond a reasonable doubt. *State v. Miller*, 131 Wn.2d 78, 90, 929 P.2d 372 (1997). Manifest constitutional error is harmless only if the untainted evidence is so overwhelming that it necessarily supports a guilty verdict. *State v. Guloy*, 104 Wn.2d at 426 (1985); *State v. Jones*, 71 Wn. App. 798, 813, 863 P.2d 85 (1993). Any error that infringes on a constitutional right is presumed prejudicial. *State v. Dunn*, 125 Wn. App. at 593 (2005).

Four Washington decisions compel reversal of Roger Flook's guilty conviction. In *State v. Sutherby*, 138 Wn. App. 609, 158 P.3d 91 (2007), *aff'd on other grounds*, 165 Wn.2d 870, 204 P.3d 916 (2009), a jury convicted Randy Sutherby of child rape and child molestation, among other charges. This court reversed because the trial court

21

allowed the victim's mother to testify that her daughter was telling the truth. The mother stated she could determine if her daughter lied because of a half-smile that appeared on the child's face on prevarication.

A second important decision is *State v. Alexander*, 64 Wn. App. 147 (1992). The prosecution questioned the victim's counselor, David Bennett, about whether the victim gave any indication that she was lying about the abuse. Bennett testified he did not believe the victim lied. This court reversed the conviction of Robert Alexander for child rape. By declaring the victim to be speaking the truth, Bennett essentially opined on the guilt of Alexander. An expert's opinion as to the defendant's guilt invades the jury's exclusive function to weigh the evidence and determine credibility. Without analysis, this court also concluded that the error, combined with other error, was not harmless beyond a reasonable doubt.

Another important decision is *State v. Dunn*, 125 Wn. App. 582 (2005). This court reversed another conviction for rape of a child on the ground of inadmissible testimony. Physician's assistant, James Kramer, testified that, despite an absence of any physical evidence of rape, he concluded that sexual abuse occurred because of the detailed story told him by the victim. The impermissible testimony was prejudicial because the only evidence of sexual abuse was the child's own testimony and hearsay statements to others. The evidence was sufficient to convict Larry Dunn of rape, but still

22

not harmless. The trial became a credibility contest between the alleged victim and the accused.

A final compelling decision is *State v. Johnson*, 152 Wn. App. 924 (2009). The State charged Gerald Johnson with child molestation. His trial counsel failed to object to impermissible opinion testimony. The jury heard testimony that Johnson's wife believed the story of the victim. The court held the testimony to be reversible and manifest constitutional error. The testimony invaded Johnson's right under article I, section 2 of the Washington Constitution for a fair trial before an impartial jury.

The State astutely observes that only explicit or almost explicit statements by a witness rise to the level of constitutional error reviewable for the first time on appeal. *State v. Kirkman*, 159 Wn.2d at 937 (2007). The State contends that Sheriff Brett Myers did not engage in explicit vouching. Roger Flook argues that Myers' testimony is sufficiently explicit to rise to the level of constitutional error. We agree with Flook. Sheriff Myers' testimony inevitably told the jury that Flook, in Myers' view, prevaricated.

*State v. Barr*, 123 Wn. App. 373, 98 P.3d 518 (2004) enlightens our opinion. Derrick Barr met A.J. at a bar, where both imbibed. The two departed the bar. According to A.J., Barr then pushed her into the back of a car and forced her to have anal, oral, and vaginal sex with him. When released, A.J. ran naked from the waist down while screaming and sobbing. A.J. suffered abrasions, bruising, and a bite mark.

23

According to Barr, A.J. seduced him. At trial, Officer Brett Koss testified about interviewing Barr while employing the Reid Investigative Technique, which entailed the use of verbal and nonverbal clues to determine an interviewee's deceptiveness. On direct examination, Koss testified to signals of deception:

> What I have been taught [by] some of these schools is people feel guilty and that they realize there is [sic] consequences and lots of times they'll verbalize those fears. So it was obvious to me he was afraid he was going to go to prison for this.
>
> . . . .
> . . . [T]hat's one of the big flags like that and like utterances about the thing going to prison, those are big flags when you see those things start to bunch together. You get an idea somebody is being deceptive.
>
> . . . .
> . . . Again, it didn't seem genuine to me. It didn't seem like if he was really feeling these emotions and that worked up he would be hitting the table and stuff. He wouldn't have these ups and downs so quickly.

*State v. Barr*, 123 Wn. App. at 378-79 (alteration in original) (italics omitted).

In analyzing Officer Brett Koss's testimony, this court observed:

> The State maintains that the testimony here was not improper because the officer did not testify that Mr. Barr was being deceptive, but, rather, the officer's testimony consisted of observations of Mr. Barr's behavior indicating that there were signs that Mr. Barr was being deceptive. This is a distinction without a difference. The officer's testimony was clearly designed to give the officer's opinion as to whether Mr. Barr had committed the offense. . . .
>
> . . . .
> In short, the officer's testimony invaded the province of the jury by impermissibly commenting on Mr. Barr's guilt.

*State v. Barr*, 123 Wn. App. at 382-83.

24

The untainted evidence against Roger Flook does not overwhelm. Therefore, the constitutional error likely impacted the trial. To repeat a second time, the State, through no fault of its own, lacked physical evidence and corroborating eyewitness testimony. The trial pitted the veracity of A.S. and Roger Flook. The respected testimony of a county sheriff as to the veracity of the two would likely influence the jury.

### Flook's Prior Acts

Roger Flook seeks reversal of his convictions because the trial court purportedly, without any analysis on the record, erroneously admitted evidence of other bad acts under ER 404(b) and the error harmed him. The State responds that the record suffices to establish that the trial court conducted the appropriate analysis. Because this issue may arise on a retrial, we address whether the trial court employed the needed analysis. Because we reverse on other grounds, we do not address whether any error was harmless.

Washington's familiar ER 404(b) reads, in relevant part:

> **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A trial court's interpretation of ER 404(b) is a question of law that this court reviews de novo. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). ER 404(b) prohibits evidence of past misdeeds solely to prove a defendant's criminal propensity. *State v. Nelson*, 131 Wn. App. 108, 115, 125 P.3d 1008 (2006). Evidence of prior bad acts is

25

presumed inadmissible, and any doubts as to admissibility are resolved in favor of exclusion. *State v. DeVincentis*, 150 Wn.2d at 17; *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). The question asked here is whether Roger Flook's showing of Internet images to A.S., use of profanity, telling A.S. that he found a sex toy in A.S.'s mother's drawer, spanking A.S. on her bottom, asking A.S. to sit on his lap in a car in the driveway of their home, and kissing A.S. on the neck was relevant to prove something other than propensity.

Before the trial court admits evidence of prior misconduct under ER 404(b), the court must (1) find by a preponderance of the evidence that the prior misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009); *State v. DeVincentis*, 150 Wn.2d at 17. The trial court must conduct the above analysis on the record. *State v. Asaeli*, 150 Wn. App. 543, 576 n.34, 208 P.3d 1136 (2009). The requirement for on the record balancing facilitates appellate review and ensures that the judge gives thoughtful consideration to the issue. *State v. Pirtle*, 127 Wn.2d 628, 651, 904 P.2d 245 (1995).

The record on appeal shows the trial court identified the purpose of the evidence to be demonstrating a lustful disposition toward A.S., motive, intent, knowledge, and absence of mistake or accident. We might assume that the trial court considered the

26

evidence relevant to whether Roger Flook touched A.S.'s private area on June 6, 2014. Nevertheless, the trial court, on the record, did not find the evidence to likely be true and did not weigh the prejudice of the testimony with the probative value of the evidence. We direct the trial court, before any retrial, to address all four ER 404(b) elements before determining whether to permit the evidence at trial.

## STATEMENT OF ADDITIONAL GROUNDS

Roger Flook raises two issues in his statement of additional grounds: (1) did the trial court err by not dismissing both charged counts when the elements of each count were not met, and (2) did the State deny Roger Flook his constitutional right to a fair trial. This court requested additional briefing from the parties, as allowed under RAP 10.10(f), by answering the following questions:

> (1) Does statement of additional ground 1 raise a sufficiency of the evidence claim or is it limited to an appeal of the motion to dismiss for failure to make a prima facie case made following the State's case in chief?
> (2) Is there sufficient evidence to support Flook's conviction for child rape in the first degree?

In Roger Flook's supplemental brief, he argues the statement of additional ground challenges the sufficiency of the evidence to convict of both crimes. The State asks this court to consider Flook's statement of additional grounds as a challenge to the denial of a midtrial motion to dismiss. We give Flook the benefit of the doubt and review whether sufficient evidence supports the convictions. Since we hold that sufficient evidence

27

supports the convictions, the State suffers no prejudice. Despite reversing the conviction and remanding for a new trial on other grounds, we address the sufficiency of evidence because an absence of sufficiency would require dismissal of the charges with prejudice.

Roger Flook contends insufficient evidence establishes penetration of A.S.'s vagina for purposes of the child rape charge. Evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). This court draws all reasonable inferences in favor of the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). Only the trier of fact weighs the evidence and judges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

The controlling statute, RCW 9A.44.073, declares:

> A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim.

Another Washington statute defines "sexual intercourse" as:

> (a) has its ordinary meaning and occurs upon any penetration, however slight, and
> (b) [a]lso means any penetration of the vagina or anus however slight, by an object[.]

28

RCW 9A.44.010(1). "Vagina" means "all of the components of the female sexual organ and not just '[t]he passage leading from the opening of the vulva to the cervix of the uterus. . . .'" *State v. Montgomery*, 95 Wn. App. 192, 200, 974 P.2d 904 (1999) (alterations in original) (quoting THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 1970 (3d ed. 1992)). The *Montgomery* court determined that "vagina" includes the "labia minora." 95 Wn. App. at 201. The labia minora are the two thin inner folds of skin enclosed by the labia majora. *State v. Montgomery*, 95 Wn. App. at 201. The State must prove that the defendant penetrated, at a minimum, the lips of the sexual organs. *State v. Bishop*, 63 Wn. App. 15, 19, 816 P.2d 738 (1991).

*State v. Delgado*, 109 Wn. App. 61, 33 P.3d 753 (2001), *rev'd on other grounds* 148 Wn.2d 733, 63 P.3d 792 (2003), informs our decision. Dumas Delgado took an eight-year-old girl inside his home and put his hand down her pants, inside her underwear, and rubbed her vagina. The child later told an interviewer and defense investigator that Delgado touched her "'up in the inside part of [her] private,'" "'in the folds'" of her external genitalia, but his finger did not go into the "'hole'" that goes up inside her body. *State v. Delgado*, 109 Wn. App. at 63-64. The court found this evidence sufficient to establish penetration. *State v. Delgado*, 109 Wn. App. at 65-66.

A.S. testified that Roger Flook penetrated the folds of her genitalia. This testimony supported the jury's conviction for first degree rape.

Roger Flook also contends that insufficient evidence establishes the crime of

29

sexual molestation. He argues that the evidence does not support a finding that the alleged contact was "sexual contact" within the definition of RCW 9A.44.010 and RCW 9A.44.083.

Under RCW 9A.44.083(1):

> A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

RCW 9A.44.010(2) defines "sexual contact" as

> any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party.

While in the criminal context direct evidence of sexual gratification is not required; the evidence must support an inference of sexual gratification. *State v. Powell*, 62 Wn. App. 914, 917-18, 816 P.2d 86 (1991); *State v. Price*, 127 Wn. App. 193, 202, 110 P.3d 1171 (2005), *aff'd*, 158 Wn.2d 630, 146 P.3d 1183 (2006).

In *State v. Powell*, 62 Wn. App. 914, this court found the evidence insufficient to support an inference that the defendant's touching of a child was for sexual gratification. Harry Powell touched a female child on three occasions:

> [W]hile she was seated on his lap, [he] hugged her around the chest. As he assisted her off his lap he placed his hand on her "front" and bottom on her underpanties under her skirt. On another occasion, while [the child] was alone with [the defendant] in his truck waiting for her cousin, he touched both her thighs. On both occasions, he only touched her on the

30

> outside of her clothing. . . . She was unable to describe how he touched
> her.

*State v. Powell*, 62 Wn. App. at 916. In finding insufficient evidence, the court

emphasized the fact that the touches were fleeting and "equivocal" and thus susceptible

of innocent explanation. *State v. Powell*, 62 Wn. App. at 917-18. We explained that the

defendant touched the child's bottom while lifting her off his lap; that the child did not

remember how the defendant touched her "in the front part"; that when she told him to

stop he said, "Oops" and stopped. The child was clothed on each occasion, the touches

were outside the clothes, and Powell uttered no threats, bribes, or requests not to tell. The

court declared that the State must present additional evidence of sexual gratification when

the touching occurs through clothing or when the touching is of intimate parts of the body

other than the primary erogenous area.

*State v. Price*, 127 Wn. App. 193 (2005) presents the opposite outcome. This

court found sufficient evidence to support an inference of sexual gratification when the

defendant rubbed a child's vagina long enough to cause redness and swelling still visible

when the child's mother picked her up from day care. In so holding, the court explained

that no additional evidence was required because the sexual contact was not fleeting or

susceptible of innocent explanation.

In this appeal, the testimony indicated that Roger Flook touched A.S.'s primary

erogenous zone multiple times under her clothing. When she rolled away, he said "come

31

on." There is no innocent explanation for a grown man to put his hands down an eleven-year-old girl's pants while in bed with her. Sufficient evidence supports "sexual contact."

Roger Flook next contends that the prosecuting attorney breached his constitutional duty when he failed to investigate false and contradictory testimony. Flook emphasizes multiple witnesses provided conflicting statements. He characterizes these contradictions as false testimony. We consider this argument to raise a due process contention.

Under the United States Constitution, the Sixth and Fourteenth Amendments guarantee persons accused of a crime the right to a fair trial. *State v. Davis*, 141 Wn.2d 798, 824-25, 10 P.3d 977 (2000). The Washington Constitution provides a similar safeguard. WASH. CONST. art. I, §§ 3, 22.

The due process clause of the Fourteenth Amendment to the United States Constitution imposes on prosecutors a duty not to introduce perjured testimony or use evidence known to be false to convict a defendant. *State v. Finnegan*, 6 Wn. App. 612, 616, 495 P.2d 674 (1972). This duty requires the prosecutor to correct State witnesses who testify falsely. *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); *State v. Finnegan*, 6 Wn. App. at 616. To succeed on his claim that the prosecutor used false evidence to convict him, Flook must show that (1) the testimony or evidence was actually false, (2) the prosecutor knew or should have known that the

32

No. 34220-4-III
*State v. Flook*

testimony was actually false, and (3) that the false testimony was material. *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).

Though Roger Flook identifies some contradictions in testimony of various witnesses, he provides no support for his contention that the State knowingly presented false testimony. Contradiction is normal when witnesses view events from different vantage points. Contradiction does not equate to lies. Contradiction does not mean perjury.

## CONCLUSION

We reverse Roger Flook's convictions for child rape and child molestation. We remand for a new trial consistent with this opinion, rather than dismissal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Siddoway, J.

Lawrence-Berrey, J.

33