# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57693-7-II |
| Respondent, | |
| v. | |
| DAVID JEDIDIAH MCKIM, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—When SS was 12 years old, he told his mother that his father, David McKim, sexually assaulted him for several years. A jury found McKim guilty of two counts each of the following crimes: first and second degree child rape and first and second degree child molestation of SS. McKim appeals his four rape convictions, arguing that the State failed to prove that McKim penetrated SS. McKim also claims that the trial court erred by excluding a piece of video evidence that defense counsel produced to the State during trial after the State rested. The State cross-appeals, arguing that the trial court erred by excluding statements McKim made during a police interview.

We conclude that the evidence was sufficient to demonstrate that McKim penetrated SS, which is an essential element of first and second degree child rape. We also conclude that the trial court did not err by excluding the defense's untimely video evidence. We thus affirm McKim's convictions. Because we affirm, we need not address the State's cross-appeal.

FACTS

I. BACKGROUND

David McKim is SS's father. SS was born female in 2007 and later identified as male.[1] SS lived primarily with his mother but spent every other weekend and some school vacations with McKim. McKim mostly lived with his mother, SS's paternal grandmother, except for a brief period when he lived with his now ex-wife.

During his visits with McKim, SS spent the majority of his time with his paternal grandmother. While at his grandmother's house, SS sometimes played video games with McKim in the sunroom. SS slept in his own bedroom at his paternal grandmother's house. When McKim lived with his ex-wife, SS stayed at her house a couple of times.

When SS was 12 years old, SS's mother noticed that SS seemed depressed, was not showering, and was generally not acting himself. SS's mother asked SS's maternal grandmother to speak with him. In November 2019, SS told his maternal grandmother that McKim was sexually assaulting him. SS then told his mother about the abuse.

SS's mother immediately took SS to the hospital, where SS spoke to a triage nurse and a physician assistant. SS told both medical professionals that McKim had sexually assaulted him "rectally and vaginally" for several years. 4 Verbatim Rep. of Proc. (VRP) at 587. SS also saw a pediatrician, but declined a physical sexual assault exam. SS spoke with a police forensic interviewer and again disclosed the sexual assaults.

---

[1] Prior to and throughout trial, SS identified as male. This opinion uses male pronouns and SS's current initials.

The State charged McKim with eight total crimes: two counts of first degree child rape, two counts of second degree child rape, two counts of first degree child molestation, and two counts of second degree child molestation.[2]

Before trial, the trial court excluded statements that McKim made in a police interview under CrR 3.5, concluding the State failed to establish McKim's statements were voluntary.

## II. TRIAL

A.    SS's Testimony

McKim's case proceeded to a jury trial. During the trial, SS testified that McKim started to touch him inappropriately when he was in fourth or fifth grade and approximately 9 or 10 years old. According to SS, the first time McKim assaulted him was at McKim's ex-wife's house. SS said he was watching television with McKim when McKim "started touching all over my body," and "touching my stomach and my back and my chest and down there too, sometimes," indicating his vagina. 4 VRP at 460-61. SS said that after this first time, McKim told him to keep the encounters a secret.

SS stated that McKim touched him this way every time he went to McKim's ex-wife's house. The alleged abuse also occurred at SS's paternal grandmother's house in the sunroom, in SS's bedroom, and once on the couch. SS testified that McKim would use his hands and his penis to touch SS's body. SS said that his clothes stayed on most of the time, but sometimes McKim would "pull my pants and my underwear down, and he'd also pull his down and rub his penis on my butt. And a couple times, he'd rub it on my vagina." 4 VRP at 470.

The State asked SS about the extent of McKim's touching:

---

[2] The molestation charges were not in the initial charging document but were added later.

3

Q:     Did he ever try to put his hands or anything else inside of you?
A:     Yeah, he did. He tried to, like, he tried to put his hands inside my vagina.
Q:     What happened?
A:     Well, it hurt a lot. So I'd tell him to stop because it hurt, and he'd stop, but then, again, he'd try to do it again.

4 VRP at 470. SS later clarified that McKim "didn't manage to get all the way inside" him because McKim would stop after SS said it hurt. 4 VRP at 471. SS described the pain as "a sharp pain" that felt like McKim was "touching something or pushing against something that was not meant to be touched." 4 VRP at 558. SS stated that the pain would linger for a few seconds and then go away. At one point during SS's testimony, defense counsel pointed out that in a prior interview, SS said McKim "never got inside of me." 4 VRP at 481. SS replied, "As time went on, I started to remember a little more, and he never got fully inside of me, but, like, partially," using his hands. *Id.*

SS testified that the last time McKim assaulted him was the Friday before Halloween, October 25, 2019. SS said that he was lying on the couch at his paternal grandmother's house with McKim when McKim started touching him. SS stood up and went to his bedroom, but McKim followed him and began "grinding" on SS's buttocks with his penis, eventually pulling SS's pants down and rubbing against his bare skin. 4 VRP at 473. SS testified that his friend, "N," was not at SS's grandmother's house that weekend, but his cousins and uncle were staying in the upstairs bedroom.

B.     New Video Evidence

After the State's witnesses testified, the State rested its case in chief and McKim moved to dismiss the child rape counts, claiming insufficient evidence of penetration. The trial court denied the motion to dismiss, citing SS's testimony.

4

After the lunch break that day, McKim's defense counsel informed the court that SS's paternal grandmother provided new evidence over the lunch break. The new evidence was a TikTok video that allegedly showed SS and his friend, N, in Halloween costumes together at the aquarium on Saturday, October 26, 2019. Defense counsel acknowledged that the late disclosure of the video during the trial violated discovery guidelines and apologized. However, defense counsel argued that the video should be admitted because it contradicted SS's testimony that N was not with him the weekend before Halloween. The video instead would support SS's paternal grandmother's anticipated testimony that she picked up SS and N from school on Friday, October 25 and N spent the weekend with SS.

The State argued that the video should be excluded because SS did not have an opportunity to testify about when the video was taken or authenticate the contents of the video. SS and his mother were scheduled to fly out of the state that evening.

The trial court first commented that the video only showed the children in a public place, so the "video itself doesn't actually prove that [N] was [at SS's grandmother's house] for the weekend or there beyond the 30 seconds of this video." 6 VRP at 879. The trial court then discussed the factors for excluding evidence that violates discovery rules. These factors are the effectiveness of less severe sanctions than exclusion, the impact of exclusion of the evidence on the outcome of the case, the extent to which the evidence would surprise or prejudice the State, and whether the violation was willful or in bad faith.

When determining whether less severe sanctions—like allowing the State to reopen its case-in-chief and recall witnesses—were appropriate, the trial court noted that the State's witnesses already testified and were about to leave the state. It also expressed concern about being

5

able to retain all of the jurors if the trial continued for several additional days, thereby risking a mistrial. Regarding the video's impact on the outcome of the case, the trial court stated that the video went to a collateral issue, and not "the direct issue of whether or not [McKim] committed these crimes." 6 VRP at 881. The trial court also concluded that SS's paternal grandmother could still testify about whether N was with SS the weekend before Halloween without referencing the video. The trial court acknowledged that defense counsel did not purposefully withhold this evidence, but still concluded that the video was "exceedingly late" and thus unfairly prejudicial to the state. *Id.* Ultimately, the trial court concluded that based on its balancing of the relevant factors, the video would not be admitted as evidence.

C.     Testimony on Behalf of McKim

SS's paternal grandmother testified about the events of the weekend before Halloween. She recalled that she picked up SS and N from school on Friday, October 25, 2019, and N slept over that night. On Saturday, October 26, SS's grandmother took SS and N to the aquarium in their Halloween costumes and drove N home at 9:00 p.m. that evening.

McKim also testified that N was at his mother's house that weekend and left on Saturday evening. McKim denied ever touching SS inappropriately.

D.     Trial Outcome and Appeal

After closing arguments, the trial court instructed the jury that sexual intercourse, an essential element of first and second degree rape, includes "any penetration of the vagina or anus however slight, by an object, including a body part." Clerk's Papers at 449. McKim did not object to this instruction.

The jury found McKim guilty on all 8 counts. The trial court sentenced McKim to 285 months to life with lifetime community custody. McKim appeals.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

McKim argues that the State did not present sufficient evidence that McKim penetrated SS, so it failed to satisfy the "sexual intercourse" element of first and second degree child rape. Br. of Appellant at 22. We disagree.

In a challenge to the sufficiency of the evidence, our review is "highly deferential to the jury's decision." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). We do not consider "questions of credibility, persuasiveness, and conflicting testimony." *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011). We instead ask whether, taking the State's evidence as true and drawing all reasonable inferences in the State's favor, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Altman*, 23 Wn. App. 2d 705, 710, 520 P.3d 61 (2022). Circumstantial evidence and direct evidence are equally reliable under this standard. *State v. O'Neal*, 159 Wn.2d 500, 506, 150 P.3d 1121 (2007).

A person commits first degree child rape "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." Former RCW 9A.44.073(1) (1988). A person commits second degree child rape "when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." Former 9A.44.076(1) (1990). Under

these statutory definitions, "sexual intercourse" includes "any penetration of the vagina or anus however slight, by an object . . . except when such penetration is accomplished for medically recognized treatment." Former RCW 9A.44.010(1) (2007).

Under Washington law, "vagina" encompasses "all of the components of the female sexual organ and not just '[t]he passage leading from the opening of the vulva to the cervix of the uterus.'" *State v. Montgomery*, 95 Wn. App. 192, 200, 974 P.2d 904 (1999) (quoting THE AMERICAN HERITAGE DICTIONARY 1970 (3d ed. 1992)). This definition includes the labia minora, which are the inner folds of the vagina. *Id.* at 201. Penetration of the vagina thus occurs when a defendant breaches "'the lips of the victim's sexual organs.'" *State v. Delgado*, 109 Wn. App. 61, 65, 33 P.3d 753 (2001) (quoting *State v. Bishop*, 63 Wn. App. 15, 19, 816 P.2d 738 (1991)), *rev'd on other grounds*, 148 Wn.2d 723, 63 P.3d 792 (2003).

McKim argues that SS's testimony is not sufficient to show beyond a reasonable doubt that McKim penetrated SS. He contends that SS's testimony was vague and could refer to McKim "simply pinching or scratching [SS's] thighs." Br. of Appellant at 27.

SS testified that McKim abused him from when SS was approximately 9-to-12-years-old. Though SS testified that McKim never got "fully inside" him, SS also stated that McKim's hands got "partially" inside his vagina and that this caused a "sharp pain" like McKim was "pushing against something that was not meant to be touched." 4 VRP at 481, 558. From this testimony, a jury could reasonably infer that McKim's hands at least entered the lips of SS's vagina, getting "partially" inside him and pushed against the opening of SS's vulva, causing SS pain. *Id.* at 481. Under the broad definition of "vagina" in Washington law, which is not limited to the vaginal canal, McKim's actions would constitute penetration. Thus, taking SS's testimony as true, a

rational jury could conclude that McKim penetrated SS's vagina and the State proved the sexual intercourse element of first and second degree rape beyond a reasonable doubt. We hold that there was sufficient evidence that McKim committed two counts of first degree rape of a child and two counts of second degree rape of a child.

## II. EXCLUSION OF EVIDENCE

A.    Discovery Violation

McKim argues that the trial court abused its discretion by excluding the video evidence discovered during trial. He claims the video would have refuted SS's claim that McKim assaulted him the weekend before Halloween and would have cast doubt on SS's credibility more generally. McKim also contends that the trial court did not appropriately consider whether to reopen the State's case and have SS testify about the video over Zoom. Finally, McKim argues that because the defense did not know about the video, exclusion was a "draconian" and untenable sanction. Br. of Appellant at 37. We disagree.

Under CrR 4.7(b)(2)(x), the trial court may order a criminal defendant to disclose their evidence before trial. If during trial, a party discovers additional evidence that has not been disclosed, the party must promptly notify opposing counsel and the trial court of the undisclosed evidence. CrR 4.7(h)(2). If a party fails to comply with a trial court's discovery order, the trial court can "permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action[,] or enter such other order as it deems just under the circumstances." CrR 4.7(h)(7)(i). Defense counsel conceded below that the late disclosure of the video in question was a discovery violation.

We review a trial court's decision to exclude evidence as a sanction under CrR 4.7 for an abuse of discretion. *State v. Hutchinson*, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998), *abrogated on other grounds by State v. Jackson*, 195 Wn.2d 841, 467 P.3d 97 (2020). A trial court abuses its discretion when it makes a decision on untenable grounds or for untenable reasons. *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010). Generally, failure to produce evidence in a timely manner is appropriately remedied by continuing trial so that the nonviolating party can address the new evidence. *Hutchinson*, 135 Wn.2d at 881. Exclusion of evidence is "an extraordinary remedy and should be applied narrowly." *Id.* at 882. The trial court must consider four factors when deciding whether to exclude evidence:

> (1) the effectiveness of less severe sanctions; (2) the impact of witness preclusion on the evidence at trial and the outcome of the case; (3) the extent to which the prosecution will be surprised or prejudiced by the witness's testimony; and (4) whether the violation was willful or in bad faith.

*Id.* at 883.

Here, the trial court analyzed each of the four *Hutchinson* factors before deciding to exclude the video. First, it noted that the video was provided to the State after it had rested, which was "exceedingly late." 6 VRP at 881. The trial court then stated that less severe sanctions would not be appropriate because each option would require the State to reopen its case and make SS testify again after flying back to his home state. The court expressed concern that the resulting delay would risk loss of jurors and a mistrial. These concerns would still be relevant if SS testified again remotely. Additionally, defense counsel did not ask the trial court to arrange for SS to testify remotely after he arrived home.

As to the video's impact on the outcome of the case, the court acknowledged that the video may be relevant to SS's credibility, but it only proved a collateral issue: SS and N were at the

aquarium at some point the weekend before Halloween. This contradicts SS's testimony that he did not spend time with N that weekend, but it does not go to the ultimate question of whether McKim raped SS. And McKim and SS's paternal grandmother were still permitted to testify that N stayed at SS's grandmother's house that Friday night, so there were other means to demonstrate N's presence that weekend in contrast with SS's testimony.

The court recognized that the defense did not know about the video before the trial, so it did not willfully keep the video from the court. But ultimately, the delay and disruption prejudiced the State, which had already rested its case on the existing evidence.

Based on its analysis of the *Hutchinson* factors, the trial court did not abuse its discretion by excluding the video. The trial court's decision was not untenable because all but one factor weighed for excluding the evidence. Of particular note are the video's collateral nature and the potential impact of delays on the State's witnesses and the jury.

B.      Constitutional Right to Present a Defense

McKim argues that exclusion of the video evidence violated his constitutional right to present a defense. We disagree.

A criminal defendant has a constitutional right to present a defense. *State v. Jennings*, 199 Wn.2d 53, 63, 502 P.3d 1255 (2022); *see* U.S. CONST. amend VI; WASH. CONST. art. I, § 22. This right "does not extend to irrelevant or inadmissible evidence." *State v. Wade*, 186 Wn. App. 749, 764, 346 P.3d 838 (2015). However, when evidence is relevant, a "reviewing court must weigh the defendant's right to produce relevant evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights." *Jennings*, 199 Wn.2d at 63 (citing *State v. Hudlow*, 99 Wn.2d 1, 16, 659

P.2d 514 (1983)). Generally, exclusion of evidence that is prejudicial to the State, only minimally probative, and can be shown through other testimony does not violate a defendant's right to present a defense. *Id.* at 63-67. In *Jennings*, the Washington Supreme Court distinguished between "evidence that merely bolsters credibility and evidence that is necessary to present a defense." *Id.* at 66-67.

Here, the extremely late discovery of the video evidence—after the State had rested— prejudiced the State. The trial court found that if it admitted the evidence, the State would have had to change the flights of its two key witnesses and risk a mistrial due to the delay.

Regarding McKim's right to present a defense, the video evidence was only minimally relevant. The video allegedly shows SS and N together at a public location on the Saturday before Halloween. Although it may have corroborated McKim's version of events that weekend and bolstered his credibility, ultimately the video did not answer the central question of whether McKim raped SS. The video simply confirmed whether N was with SS at all that weekend; it did not show whether N spent the Friday night at McKim's mother's house. Additionally, even if N did spend Friday night and Saturday afternoon with SS, the alleged abuse could have occurred on Saturday night or Sunday when N was not present. Finally, both McKim and McKim's mother were still able to testify about N's presence that weekend.

Because the video was prejudicial, minimally probative, and its contents could be advanced through testimony, the trial court did not violate McKim's constitutional rights by excluding it. We affirm.

### III. EXCLUSION OF POLICE INTERVIEW

The State brings a cross-appeal arguing that McKim's statements during a police interview should not have been excluded. Because the jury found McKim guilty on all charges and we affirm McKim's convictions, we need not reach this issue.

### CONCLUSION

We affirm McKim's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

CHE, J.